**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JUNE 6, 2007

ALINA MUCI,

      Plaintiff-Appellee,

v

No. 129388

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH

TAYLOR, C. J.

At issue in this no-fault automobile insurance case is whether provisions of the no-fault act and the parties' contract of insurance establish the extent of allowable conditions on a medical examination of the claimant, or whether the allowable conditions are within a circuit court's discretion pursuant to MCR 2.311 (the general rule governing discovery with respect to physical and mental examinations). We conclude that the act and the contract establish the parameters of what is allowed and that the court's role is confined to adjudicating disputes that arise under them. Accordingly, we reverse the judgment of the Court of

Appeals and the order of the trial court that held to the contrary, and remand to the trial court for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

Alina Muci, an insured of State Farm Mutual Automobile Insurance Company (State Farm), was injured in an automobile accident in May 2002. She sought medical and psychiatric treatment for those injuries and, although the record is sketchy, it appears that she filed a claim with State Farm for personal protection insurance (PIP) benefits pursuant to the established process under the no-fault act, MCL 500.3142(2).[1] In such a situation State Farm, also operating under the procedures of the no-fault act, would have usually demanded, pursuant to MCL 500.3151 and the relevant section of the State Farm insurance policy,[2] that Muci submit to an independent medical examination. However, in this case, it

---

[1] MCL 500.3142(2) provides:

> Personal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained. If reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. Any part of the remainder of the claim that is later supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. For the purpose of calculating the extent to which benefits are overdue, payment shall be treated as made on the date a draft or other valid instrument was placed in the United States mail in a properly addressed, postpaid envelope, or, if not so posted, on the date of delivery.

[2] A person making a claim shall "be examined by physicians chosen and paid by us as often as we reasonably may require."

2

appears that, for reasons not indicated in the record before us, State Farm did not demand an independent medical examination. These unknown circumstances, which are irrelevant to the issue before us, culminated in State Farm's not paying Muci's claim, and she filed this action for a declaratory judgment, asserting that State Farm was unreasonably refusing to pay PIP benefits to which she was entitled.

As the lawsuit developed, State Farm demanded an unconditional medical examination (customarily referred to as a defense medical examination or DME) pursuant to § 3151 of the no-fault act. Muci refused, asserting that § 3151 and the policy were not exclusively controlling and that, rather, the conduct of any independent medical examination was also governed by MCR 2.311(A), the rule covering independent medical examinations in litigation of any kind. State Farm disputed Muci's assertion, contending that MCR 2.311(A) conflicts with § 3151, because the rule limits the unqualified right to an independent medical examination provided in § 3151 by requiring that litigation be pending and good cause for the examination be shown, and by allowing court-created conditions on the examination.

State Farm, in a motion to compel Muci to submit to a medical examination pursuant to § 3151, asserted that, as the insurer, it had the unconditional right to an independent medical examination conducted by its own physician without regard to whether litigation was pending or good cause for the examination had been shown. The trial court, evidently believing that MCR 2.311(A) could be read as a

rule that merely supplemented § 3151, issued an order allowing the medical examination but subject to many of the conditions proposed by plaintiff. The order included the following conditions:

1. That included with Plaintiff's notice of the medical examiner's deposition, Plaintiff's counsel shall be entitled to subpoena copies of all IRS form 1099's for the years 2000, 2001, and 2002, inclusive, for payments issued to said examiner, individually, and to any entity which received compensation for Independent and/or Insurance and/or defense medical examinations and related forensic services performed by said examiner, including but not limited to:

a. Independent and/or Insurance and/or Defense medical examination;

b. Independent and/or Insurance and/or Defense medical examination reports;

c. Depositions;

d. Medical records reviews; and

e. Forensic activity for which payments were made.

In the event said examiner refuses to provide the subpoenaed documents at his deposition, Defendant will be barred from introducing said examiner's testimony at trial.

2. That the Plaintiff may be accompanied by her attorney or other representative as allowed by MCR 2.311(A) to observe the examination and/or be permitted to record the examination by means of simultaneous audio and visual recording.

3. No other persons other than Plaintiff, her representative, the videographer, and designated medical examiner and his or her staff are allowed to be present during the examination.

4. That the examination must be limited to Plaintiff's conditions, which are in controversy in this action, as provided by the Michigan Court Rules of 1985.

4

5.   Any persons assisting the defense medical examiner must be fully identified by full name and title to Plaintiff, Plaintiff's representative, and on the video.

6.   Defendant shall provide transportation or pay transportation to the Plaintiff for the evaluation/examination.  If the Plaintiff chooses to drive or be driven by someone else she knows, the Defendant will reimburse the Plaintiff for reasonable transportation costs to and from each examination, at the rate of .35 cents [sic] a mile.

7.   That the total time for examination and testing, if applicable, shall not be limited by Plaintiff or Plaintiff's counsel.

8.   That a copy of this order shall be provided to the physician by the defense attorney prior to the exam.

9.   That the Plaintiff's counsel will be provided a current copy of the curriculum vitae of the defense medical examiner no more than thirty (30) days after the scheduled appointment. [sic] As well as:

a.   Within 21 days of the entry of this order Defendant will provide a statement of the reasonable charge for the Plaintiff's counsel taking of 1 hour deposition of the defense medical examiner at the medical examiner's office.

b.   The full and correct name of the defense medical examiner (or separate billing entity, i.e. payee), with the tax identification number so that Plaintiff can comply with tax code and regulation requirements for any payment made in taking the examiner's deposition.

10.   That no diagnostic test or procedure that is painful, protracted, or intrusive will be allowed as set forth in the Michigan Court Rules of 1985.  X-rays will be allowed.

11.   That the Plaintiff may be held responsible for cancellation fees charged the Defendant, unless the Plaintiff gives notification to the office of the Defense counsel 48 hours before canceling the appointment.

12.   That the Plaintiff's attorney will be permitted to intercept communications between the Plaintiff and the defense medical examiner, in the same manner as if the Plaintiff's deposition were

being taken and if the communications are in violation of this order. Otherwise the attorney will not involve himself in the examination proceedings.

13. Defendant's attorney shall provide all pertinent information to the defense medical examiner.

14. That Plaintiff will not be required to give any oral history of the accident.

15. That Plaintiff will not be required to give any oral medical history not related to the areas of injuries claimed in this lawsuit.

16. That information that may be required by the Defense medical examiner may be obtained through the normal course of discovery.

17. That Plaintiff will not be required to sign any paperwork or fill out any paperwork at the defense medical examiner's office, including "patient information forms" or "consent forms" or the like, since the Plaintiff is not a patient of the defense medical examiner's office and is submitting to this examination only pursuant to Court Order and the requirements of the Michigan Court Rules of 1985.

18. That Plaintiff's counsel will be provided a copy of any and all reports and writings generated by the defense medical examiners in this matter pursuant to the Michigan Court Rules of 1985, including, but not limited to, a copy of a detailed written report, setting out any history obtained, examination, findings, (including the results of all tests made, diagnoses, prognoses, and conclusions of the examiner, all record review reports, a copy of all reports of earlier examinations of the same condition of the examinee made by that of [sic] any other examiner).

19. Throughout the litigation, the evaluation and examiner will be called and referred to as a defense medical evaluation and defense medical examiner respectively; and the term "independent medical evaluation" and/or "independent medical examiner" will not be used in the report, orally in a deposition, or at trial.

This order, with its conditions, prompted State Farm to file an application

for an interlocutory appeal in the Court of Appeals. The Court of Appeals granted

the application and, in a published opinion, the divided panel affirmed the trial court's order. *Muci v State Farm Mut Automobile Ins Co,* 267 Mich App 431; 705 NW2d 151 (2005).

Judge Fitzgerald, writing for the majority, stated that while § 3151 gave the parties the right to include reasonable provisions in the policy regarding medical examinations, it did not give the parties a right to contractually determine how to proceed with discovery, and also stated that the trial court properly treated State Farm's motion to compel a medical examination in the present litigation as a discovery device controlled by MCR 2.311. *Muci, supra* at 440-442.

Presiding Judge Saad dissented, stating that the "no-fault law should govern a no-fault insurer's statutory right to have a claimant submit to a medical examination" and that this right "does not depend on whether an insured has filed a lawsuit for failure to pay" or if there is a showing of "good cause." *Id.* at 445, 446 (Saad, P.J., dissenting). Further, the dissent concluded that the Legislature had made no provisions for the conditions placed on the examination of the kind the trial court imposed in this case. The dissent stated that "MCR 2.311 should not be used preemptively to circumvent our Legislature's extensive statutory scheme for dealing with medical examinations under the no-fault act" and that "it is clear that our Legislature dealt comprehensively with both the question of medical examinations for PIP claimants and the appropriate penalties for an insurer's unreasonable refusal to pay benefits." *Id.* at 446, 448. Therefore, the dissent concluded, "[I]f a no-fault carrier abuses its right under § 3151, a trial

7

court should use no-fault law and apply the remedies available in [MCL 500.3142, 500.3153, and 500.3148] rather than use MCR 2.311 to impose conditions for the taking of such examinations—conditions our Legislature chose not to impose." *Id.* at 448.

State Farm sought leave to appeal in this Court, arguing that this effort of plaintiff's counsel placed at risk State Farm's "ability to conduct fair and meaningful discovery." This Court ordered oral argument on whether the application for leave to appeal should be granted. 475 Mich 877 (2006).

## II. STANDARD OF REVIEW

The interpretation of court rules and statutes presents an issue of law that is reviewed de novo. *Lapeer Co Clerk v Lapeer Circuit Judges,* 465 Mich 559, 566; 640 NW2d 567 (2002).

## III. ANALYSIS

The Legislature enacted the no-fault act in 1972. The act eliminated the old automobile tort reparations system for injured parties and replaced it with a mandatory coverage, no-fault automobile insurance system. Under this scheme, an injured insured was guaranteed what the Legislature considered to be a sufficient and expeditious recovery from his or her own insurer for all expenses for reasonably necessary medical care, recovery, and rehabilitation, as well as some incidental expenses. *Kreiner v Fischer*, 471 Mich 109, 114; 683 NW2d 611 (2004).

From our first handling of this statute in an advisory opinion issued in 1973, *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441; 208 NW2d 469 (1973), we have, without exception, emphasized the act's comprehensive nature.[3]   What is unmistakable about this first-party payment scheme is that it was designed to cover contingencies that could arise, including, as relevant here, the process for making a claim, the procedures for investigation by the insurer, and the range of available enforcement tools.  All of which are found within the four corners of the act.  Thus, the legislative enactment in great detail dictated how injured parties are to make claims with "reasonable proof," mandated rapid payment within 30 days by insurers if the proofs were reasonable, and established fraud prevention investigation and examination rights for insurers that worked in accord with those important goals.  Thus, upon receiving a claim, insurers have great latitude in evaluating the claim, including scheduling a medical examination.  In this regard, MCL 500.3151 provides:

> When the mental or physical condition of a person is material to a claim that has been or may be made for past or future personal protection insurance benefits, the person shall submit to mental or physical examination by physicians. A personal protection insurer may include reasonable provisions in a personal protection insurance

---

[3] *Shavers v Attorney General,* 402 Mich 554, 579; 267 NW2d 72 (1978); *Davey v Detroit Automobile Inter-Ins Exch,* 414 Mich 1, 10; 322 NW2d 541 (1982); *Thompson v Detroit Automobile Inter-Ins Exch,* 418 Mich 610, 624; 344 NW2d 764 (1984); *Priesman v Meridian Mut Ins Co,* 441 Mich 60, 65; 490 NW2d 314 (1992); *Michigan Ed Employees Mut Ins Co v Morris,* 460 Mich 180, 194; 596 NW2d 142 (1999); *State Farm Fire & Cas Co v Old Republic Ins Co,* 466 Mich 142, 150; 644 NW2d 715 (2002).

policy for mental and physical examination of persons claiming personal protection insurance benefits.

Because economy in the handling of claims to reduce transaction costs was also an important goal of the no-fault scheme, *Kreiner, supra* at 117, it is noteworthy that most claims are made, investigated, and either paid or rejected without a lawsuit being filed or indeed any court intervention or even lawyer involvement.[4] To allow for enforcement, should it be needed, the Legislature, in § 3153, authorized sanctions against an insured who refuses to submit to an examination, including dismissal of the insured's claim and an award of reasonable attorneys fees against the insured.[5] It also made provisions to protect an insured from discovery practices that cause annoyance, embarrassment, or oppression in MCL 500.3159,[6] which provides:

---

[4] This is very different from the situation contemplated by MCR 2.311, which, by its own terms, is only applicable when litigation is pending. The failure to appreciate this distinction between § 3151 and MCR 2.311 has led the dissent to stray in its analysis.

[5] Other such provisions are also found in § 3142 and § 3148.

[6] We reject State Farm's argument that judicial authority to impose conditions on discovery under § 3159 is specifically limited to discovery sought under MCL 500.3158. Unlike, for example, § 3153, which specifically states it applies to §§ 3151 and 3152, there is nothing in the plain language of § 3159 that limits its application to pretrial discovery from medical entities and employers under § 3158. Rather, § 3159 clearly pertains to disputes about discovery regarding an injured person's "history, condition, treatment and dates and costs of treatment" without limiting the source of the discovery to medical entities and employers.

In a dispute regarding an insurer's right to discovery of facts about an injured person's earnings or about his history, condition, treatment and dates and costs of treatment, a court may enter an order for the discovery. The order may be made only on motion for good cause shown and upon notice to all persons having an interest, and shall specify the time, place, manner, conditions and scope of the discovery. A court, in order to protect against annoyance, embarrassment or oppression, as justice requires, may enter an order refusing discovery or specifying conditions of discovery and may order payments of costs and expenses of the proceeding, including reasonable fees for the appearance of attorneys at the proceedings, as justice requires.

The argument of the insured in this matter, which was adopted by the trial court and the Court of Appeals majority, has been that in spite of the Legislature's obvious intent shown throughout the no-fault act to treat automobile accident cases falling within the scope of the act differently, these cases, and in particular this claim and investigation situation, should be seen as just another species of civil litigation subject to all the generally applicable court rules. While the court rules control matters on which the no-fault act is silent, they do not control matters specifically addressed by the act. Here, where the act covers independent medical examinations,[7] it is entirely antithetical to the Legislature's desired approach to

---

[7] When a claim has been made under § 3142(2), § 3151 requires the no-fault claimant to "submit" to physical or mental examination under rules in the policy. The parties focus on definitions and purported ambiguities that the use of the word "submit" introduces. We need not sort through this because, even if there is doubt about its meaning, it is dispelled when one examines the enforcement provisions in § 3153 regarding the refusal to comply with § 3151. There, after indicating that the court cannot cause the arrest of the insured for disobeying a request to submit to a physical or medical examination required in § 3151, it provides for an order that directs the disobedient person (inescapably the insured) to submit to an examination and gives enforcement powers that include
(continued…)

11

argue that § 3151 does not give the insurer the right to include a policy provision allowing it to choose the examiner or even insist on the examination itself. It is simply incorrect to argue that what can be done under § 3151 of the no-fault act is no different from what is required under MCR 2.311; after all, the court rule requires pending litigation and the insurer to show good cause, and allows court-imposed conditions as a predicate to the examination while § 3151 does not have these requirements. Indeed, under § 3151 an insured must submit to a medical examination. In contrast, under MCR 2.311, whether an insured must submit to a medical examination is left to the trial court to decide. Therefore, the court rule and the statute conflict because that which is required under § 3151 is merely discretionary under MCR 2.311.[8]

Arguing in the alternative, however, Muci asserts that if it is conceded that the statute and the court rule are in conflict, the court rule should control because, as Muci sees it, claims and investigations are procedural, not substantive, and

_____

(…continued)
the disallowance of evidence and defenses of the insured. The section further allows the entry of a default and the assessment of reasonable attorney fees against the insured. Given all this, it is unmistakably clear that under § 3151, the insurer has the right to include a policy provision allowing it to pick the examiner. Further, MCL 500.3152 requires that the report generated be made available to the insured and that any refusals to cooperate under these rules can be sanctioned by the court.

[8] We further note that the court rule conflicts with § 3159. While MCR 2.311 requires the party seeking the medical examination to demonstrate good cause, § 3159 requires the party seeking to impose conditions on a discovery order such as an order for a medical examination to show good cause.

12

under *McDougall v Schanz,* 461 Mich 15; 597 NW2d 148 (1999), that means that the court rule controls. *Muci* misunderstands the rule of *McDougall*, which holds that a statute is substantive when, as in this case, it concerns a matter that has "'as its basis something other than court administration . . . .'" *Id.* at 31 (citation omitted). Accordingly, the provisions concerning medical examinations, because they do not concern court administration, are substantive, not procedural, and are supreme over the court rule, just as the general court rule concerning experts' qualifications must, pursuant to *McDougall, supra* at 30-31, yield to statutory requirements concerning expert witnesses' qualifications.

Thus, we conclude that the no-fault act comprehensively addresses the matter of claimant examinations. Accordingly, MCR 2.311 is not applicable to such examinations.

Muci argues she has demonstrated good cause under § 3159 and can thus get an order imposing conditions on the examination as § 3159 allows because, as a general matter, physicians hired by an insurer are adversarial agents of the insurer and write their reports accordingly. Contrary to Muci's assertions, good cause may only be established by "'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Hertenstein v Kimberly Home Health Care, Inc,* 189 FRD 620, 624 (D Kan, 1999), quoting *Gulf Oil Co v Bernard,* 452 US 89, 102 n 16; 101 S Ct 2193; 68 L Ed 2d 693 (1981). Physicians are presumed to be bound by the methodologies of their profession and

by principles of professional integrity.  Only with demonstrable evidence that the discovery order or medical examination will cause the claimant annoyance, embarrassment, or oppression can a claimant rebut this presumption.  Until this presumption is rebutted, a court may not impose conditions on an examination under § 3159.

Muci claims that she provided a specific demonstration of good cause through evidence that one of State Farm's physicians had previously delved into matters protected by the attorney-client privilege by asking an examinee about the status of settlement negotiations in her lawsuit.  Specifically, plaintiff introduced a written medical report prepared by the same physician who was to examine Muci. In the medical report, defendant's examiner made the following notation as part of a previously conducted independent medical examination:

> When I asked her how her lawsuit was progressing she said she really did not know.  When I inquired if there had been an offer she said she believed that one had been made.  When I asked her what her attorney's advice to her had been she said "It's up to me;" she said that she would not, however, settle for the amount that was offered.  She does not really know what amount she would like.

Here, plaintiff has produced demonstrable evidence that, on a previous occasion, defendant's medical examiner asked inappropriate questions of another examinee during an independent medical examination, including questions regarding settlement issues and inquiring into areas unquestionably protected by the attorney-client privilege. We can fathom no explanation, and defendant has provided none, explaining what appropriate purpose this line of questioning would

serve in the context of a medical examination. In this case, where plaintiff has proffered evidence that the doctor previously engaged in inappropriate questioning, plaintiff has established a basis in fact for requesting that the trial court impose conditions requiring that the doctor refrain from engaging in similar questioning in Muci's examination. Such questioning surely provides "good cause" for judicial intervention to protect against "annoyance, embarrassment or oppression," the statutory bases for imposing conditions on discovery under MCL 500.3159.

The remaining question concerns whether the various conditions imposed by the trial court on the independent medical examination were appropriate to protect against annoyance, embarrassment, or oppression. The trial court's discretion to specify conditions of discovery in no-fault cases is specifically limited to protecting "against annoyance, embarrassment or oppression, as justice requires." Therefore, any conditions of discovery imposed by the trial court must be fashioned to avert the annoying, embarrassing, or oppressive action or event that the insured establishes by her good-cause showing.

In this case, the trial court relied on MCR 2.311(A), rather than MCL 500.3159, in imposing 19 conditions on the independent medical examination defendant is entitled to conduct under § 3151. Many of those conditions bore no apparent relationship to the "annoyance" the plaintiff established–improper questioning by the medical examiner concerning the status of the litigation and attorney advice to the insured. On remand, in the event that the defendant insists

15

on using the medical examiner who asked the improper questions, the trial court shall reconsider plaintiff's proposed examination conditions, and determine which conditions, if any, ought be imposed in light of the evidence proffered by plaintiff.

## IV. CONCLUSION

In a no-fault automobile insurance case, the act and the provisions of the parties' insurance policy control whether any conditions may be placed on independent medical examinations. A trial court's ability to adjudicate disputes arising under the statute and the insurance policy regarding examinations is limited to the authority granted by the no-fault act itself, primarily the provisions of §§ 3142, 3148, 3151, 3153, and 3159, and such other sections as may apply. When an insured fails to demonstrate good cause that submission to a particular examination will cause annoyance, embarrassment, or oppression, the trial court may not impose conditions on the examination. We reverse the order of the trial court and the Court of Appeals judgment[9] that affirmed the trial court's order, and remand to the trial court for further proceedings.

Reversed and remanded to the trial court.

> Clifford W. Taylor
> Maura D. Corrigan
> Robert P. Young, Jr.
> Stephen J. Markman

---

[9] We note that the Court of Appeals concluded that State Farm waived any challenge to two of the imposed conditions because its attorney agreed to the conditions if the court rule applied, *Muci, supra* at 442; however, because the court rule does not apply in the instant case, we conclude that the challenge to the relevant imposed conditions was not waived.

16

STATE OF MICHIGAN

SUPREME COURT

ALINA MUCI,

       Plaintiff-Appellee,

v                                                                    No. 129388

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

MCL 500.3151 and MCR 2.311 do not conflict. Rather, they can and should be read together. Accordingly, during plaintiff's declaratory judgment action, when defendant sought a court order that instructed plaintiff to submit to a physical examination under MCL 500.3151, the court properly issued such an order. The court did not abuse its discretion in imposing various conditions in the order pursuant to MCR 2.311. Accordingly, I dissent from the majority opinion, which holds to the contrary, and would affirm the judgment of the Court of Appeals. *Muci v State Farm Mut Automobile Ins Co*, 267 Mich App 431; 705 NW2d 151 (2005).

APPLICABLE STANDARD OF REVIEW

The interpretation of court rules and statutes presents an issue of law that is reviewed de novo. *Lapeer Co Clerk v Lapeer Circuit Judges*, 465 Mich 559, 566;

640 NW2d 567 (2002). Additionally, the no-fault act is remedial in nature and is to be liberally construed in favor of the persons who are intended to benefit from it. *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 28; 528 NW2d 681 (1995).

MCL 500.3151 AND MCR 2.311 DO NOT CONFLICT

This Court granted leave to appeal to determine, among other things, whether MCL 500.3151 and MCR 2.311 conflict. 475 Mich 877 (2006). As this Court noted in *McDougall v Schanz*: "When there is no inherent conflict, '[w]e are not required to decide whether [the] statute is a legislative attempt to supplant the Court's authority.' 'We do not lightly presume that the Legislature intended a conflict, calling into question this Court's authority to control practice and procedure in the courts.'"[1]

MCL 500.3151 provides:

> When the mental or physical condition of a person is material to a claim that has been or may be made for past or future personal protection insurance benefits, the person shall submit to mental or physical examination by physicians. A personal protection insurer may include reasonable provisions in a personal protection insurance policy for mental and physical examination of persons claiming personal protection insurance benefits.

The statute mandates that a person who seeks personal protection benefits "shall submit to mental or physical examination by physicians." *Id.* The use of the term "shall" indicates a mandatory and imperative directive that the claimant submit to

---

[1] 461 Mich 15, 24; 587 NW2d 148 (1999) (citation omitted). In *McDougall*, the issue before this Court was whether MCL 600.2169 and MRE 702 could be construed so as to avoid a conflict.

2

examinations.[2] However, the statute does not indicate that the examination must be unrestricted or that the court cannot impose reasonable conditions on it. Moreover, the statute does not mandate that an independent medical or physical examination be performed by a physician chosen by the defendant.[3]

MCL 500.3151 provides that an insurer may include in a personal protection insurance policy reasonable provisions for mental and physical examinations of persons claiming personal protection insurance benefits. This enables the insurer to gather information in order to establish the claimant's entitlement to benefits and detect fraud. See *Cruz v State Farm Mut Automobile Ins Co*, 466 Mich 588, 608; 648 NW2d 591 (2002) (Kelly, J., concurring in part and dissenting in part).[4]

During litigation, if an insurer wishes to seek a court order requiring the claimant to submit to a mental or physical examination, the insurer may bring a motion under MCR 2.311(A), which provides:

---

[2] This Court has noted that the Legislature's use of the word "shall" in a statute generally indicates a mandatory and imperative directive. *Costa v Community Emergency Med Services, Inc*, 475 Mich 403, 409; 716 NW2d 236 (2006), citing *Burton v Reed City Hosp Corp*, 471 Mich 745, 752; 691 NW2d 424 (2005).

[3] Moreover, as noted by the Court of Appeals, there is no language in MCL 500.3151 that indicates that the statute applies only to prelitigation medical examinations. *Muci,* 267 Mich App 436 n 5. It is foreseeable that a claimant may undergo an examination pursuant to MCL 500.3151 before the commencement of litigation. It is equally conceivable that the claimant will not undergo an examination pursuant to MCL 500.3151 until after litigation has commenced.

[4] Justice Cavanagh concurred in my opinion.

3

When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental or blood examination by a physician (or other appropriate professional) or to produce for examination the person in the party's custody or legal control. The order may be entered only on motion for good cause with notice to the person to be examined and to all parties. The order must specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made, and may provide that the attorney for the person to be examined may be present at the examination.

In order to obtain a court order under MCR 2.311(A), the insurer will have to demonstrate good cause[5] and provide notice to the claimant and to all parties. Any court order requiring the plaintiff to submit to a physical or mental examination will specify, among other things, the time, place, manner, conditions, and scope of the examination. *Id.* The order may also provide that the attorney for the person to be examined may be present at the examination. *Id.*

Therefore, under this analysis, MCL 500.3151 and MCR 2.311(A) can be read in harmony. Because on their face they do not conflict, there is no need to decide whether the statute is a legislative attempt to supplant the Court's authority.

---

[5] As noted by plaintiff at oral argument, it is likely that in most, if not all, situations, the good-cause requirement will be easily established by reliance on MCL 500.3151. That provision mandates that the claimant submit to a mental or physical examination if the claimant's mental or physical condition is material to the claim for personal protection insurance benefits.

4

Accordingly, the trial court properly relied on MCR 2.311(A) when deciding whether to impose various conditions on plaintiff's examination.[6]

The majority concludes that the statute and the court rule conflict because the court rule allows court-imposed conditions while the statute is silent on the subject. I find this argument unpersuasive. Although MCL 500.3151 requires a claimant to undergo a medical examination to receive personal protection benefits, it does not state that the examination must be without limits. Nothing in the statute prohibits a court from imposing conditions on the examination once litigation has commenced. Their imposition, if reasonable, would not interfere with the insurer's substantive right to force a claimant to submit to an examination.

Moreover, the application of MCR 2.311(A) to disputes concerning an insurer's ability to enforce MCL 500.3151 is consistent with MCL 500.3159, the discovery provision of the no-fault act, MCL 500.3101 *et seq*. MCL 500.3159 provides:

> In a dispute regarding an insurer's right to discovery of facts about an injured person's earnings or about his history, condition, treatment and dates and costs of treatment, a court may enter an

---

[6] The majority contends that my dissent fails to appreciate that MCR 2.311 applies only when litigation is pending. In doing so, it makes a distinction where there is none to be made. Plaintiff filed a declaratory action for personal protection insurance benefits. Therefore, for purposes of MCR 2.311(A), there was an "action . . . pending" when defendant moved to compel the independent medical examination pursuant to MCL 500.3151.

order for the discovery. The order may be made only on motion for good cause shown and upon notice to all persons having an interest, and shall specify the time, place, manner, conditions and scope of the discovery. A court, in order to protect against annoyance, embarrassment or oppression, as justice requires, may enter an order refusing discovery or specifying conditions of discovery and may order payments of costs and expenses of the proceeding, including reasonable fees for the appearance of attorneys at the proceedings, as justice requires.

MCL 500.3159 provides that, if a dispute exists regarding an insurer's right to discovery of facts about matters such as the injured person's *condition*, the court may enter a discovery order. *Id.* Similarly, MCR 2.311(A) provides that, if the mental or physical *condition* of a party is in controversy, the court may enter an order for a medical examination. Both MCL 500.3159 and MCR 2.311(A) provide that the order may be made only "on motion for good cause." Moreover, MCL 500.3159 provides that the order "shall specify the time, place manner, conditions and scope of the discovery," while MCR 2.311(A) similarly provides that the order "must specify the time, place, manner, conditions, and scope of the examination . . . ."

Accordingly, both MCL 500.3159 and MCR 2.311(A): (1) apply to disputes involving a person's *condition*, (2) provide that a court may order a party to abide by the relevant form of discovery, (3) provide that the order will be made only on motion for good cause, and (4) provide that the order must specify the time, place, manner, conditions, and scope of the relevant discovery. Rather than

6

conflicting in any respect, the statute and the court rule are parallel with one another.[7]

Therefore, because MCL 500.3151 and MCR 2.311 do not conflict, there is no need to decide whether the statute is a legislative attempt to supplant the Court's authority. *McDougall v Schanz*, 461 Mich 15, 24; 587 NW2d 148 (1999). Accordingly, I would affirm the judgment of the Court of Appeals. It correctly affirmed the trial court's decision that defendant's motion to compel a medical examination pursuant to MCL 500.3151 was a request for a discovery device that is subject also to MCR 2.311.

APPROPRIATENESS OF THE PARTICULAR CONDITIONS AT ISSUE

Because I find that the trial court was empowered to impose conditions on the examination, the next issue is whether the particular conditions it imposed were warranted.

---

[7] Defendant contended at oral argument that MCL 500.3159 is the enforcement mechanism for MCL 500.3158. However, the language of MCL 500.3159 does not indicate that the provision is the enforcement mechanism for MCL 500.3158. This is in sharp contrast to MCL 500.3153, the enforcement mechanism for MCL 500.3151 and MCL 500.3152, which specifically provides that "[a] court may make such orders in regard to the refusal to comply with sections 3151 and 3152 as are just . . . ." MCL 500.3153. Accordingly, the Legislature clearly knows how to specify that a particular provision is an enforcement mechanism for a preceding provision. The absence of such a specification in MCL 500.3159 suggests that the Legislature did not intend that statute to be an enforcement provision for MCL 500.3158.

This Court reviews a trial court's decision regarding discovery for an abuse of discretion. *People v Phillips*, 468 Mich 583, 587; 663 NW2d 463 (2003). In this case, defendant challenges the following court-imposed conditions:

> 2. That the Plaintiff may be accompanied by her attorney or other representative as allowed by MCR 2.311(A) to observe the examination and/or be permitted to record the examination by means of simultaneous audio and visual recording.

> \* \* \*

> 14. That Plaintiff will not be required to give any oral history of the accident.

> 15. That Plaintiff will not be required to give any oral medical history not related to the areas of injuries claimed in this lawsuit.

Defendant agreed to the condition that plaintiff be accompanied by her attorney "and/or" be permitted to record the examination if the court ruled that MCR 2.311(A) applied. *Muci*, 267 Mich App 442-443. Accordingly, because I conclude that MCR 2.311(A) applies, defendant has agreed to allow plaintiff's attorney to attend the examination and to allow the examination to be recorded. In any event, MCR 2.311(A) explicitly provides that an attorney may be present during the examination.

With regard to the condition forbidding the physician from taking an oral history of the accident, defendant has other means to accomplish this objective. It can request that plaintiff answer interrogatories outlining the history of the accident. See MCR 2.309. Defendant can also request that plaintiff answer interrogatories outlining plaintiff's unrelated medical history. *Id*.

8

It is important to note that the conditions do not preclude a *written* history of unrelated medical injuries. They do not preclude the physician from inquiring into plaintiff's mental or physical condition at the time of the accident or asking how the injuries occurred or other similar questions. Accordingly, I believe that the remaining conditions challenged were reasonable, and the trial court did not abuse its discretion in imposing them.

CONCLUSION

MCL 500.3151 and MCR 2.311 do not conflict. Rather, they can be read in harmony. Specifically, MCL 500.3151 mandates that a claimant submit to a mental or physical examination. However, it does not state that this is a limitless statutory right. MCR 2.311 is the court rule addressing orders for physical or mental examinations when, as in this case, an action is pending. And it provides that the court can impose conditions on the order.

I conclude that the trial court properly relied on MCR 2.311 in imposing various conditions on the order mandating that plaintiff submit to a mental or physical examination. The conditions imposed were not an abuse of discretion. Accordingly, the Court of Appeals judgment should be affirmed.

> Marilyn Kelly
> Michael F. Cavanagh
> Elizabeth A. Weaver

9