*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LAC,

       Petitioner-Appellee,

v

GLS,

       Respondent-Appellant.

FOR PUBLICATION
July 25, 2024

No. 365120
Kent Circuit Court
LC No. 21-006727-PP

Before: RICK, P.J., and JANSEN and LETICA, JJ.

LETICA, J. (*dissenting*).

I respectfully dissent. MCL 600.1721 authorizes a trial court to award attorney fees as a remedy for criminal contempt. *In re Contempt of Henry*, 282 Mich App 656, 684-685; 765 NW2d 44 (2009); *Taylor v Currie*, 277 Mich App 85, 100; 743 NW2d 571 (2007); *Homestead Dev Co v Holly Twp*, 178 Mich App 239, 245-246; 443 NW2d 385 (1989). In light of the published authority addressing this issue, I would not adopt and extend the dicta of an unpublished decision addressing *costs* to conclude that attorney fees are not awardable for criminal contempt arising from the violation of a personal protection order (PPO). I would affirm the trial court.

## I. FACTUAL AND PROCEDURAL HISTORY

This case arises from petitioner's allegations of a physical altercation with respondent in Rockford, Michigan, where the couple resided in petitioner's cottage. Although the couple were married by a minister, the marriage was not registered in this state. On August 1, 2021, petitioner learned that respondent was corresponding with another woman. Petitioner ended the relationship with respondent and instructed him to leave the cottage. Respondent refused to leave and demanded the return of his wedding rings. When petitioner did not provide them, respondent grabbed her hands, pulled her to the ground, and attempted to remove the rings by force. Petitioner found herself underneath respondent and unable to breathe because of respondent's size and stature. Respondent held petitioner down and fought with her to obtain the rings, causing contusions, bruising, and pain in her neck, jaw, back, and left arm. Petitioner yelled at respondent to stop and to get off her. She also shouted to her adult daughter with Down syndrome to call 911.

-1-

Respondent forcibly removed two rings and fled the cottage when petitioner's daughter was on the phone with a 911 operator. Petitioner filed a complaint with the police when they arrived.

On August 2, 2021, petitioner filed a petition for an ex parte domestic PPO against respondent. Petitioner expressed that she feared for her life in light of the physical attack that occurred the day before. She also opined that the PPO was necessary in light of the extreme rage that respondent exhibited during the attack as well as his ownership of multiple guns, including an assault rifle. On August 2, 2021, the trial court authorized the ex parte PPO which prohibited respondent from entering onto petitioner's residences in Grand Rapids and Rockford and from stalking and threatening to kill or harm petitioner or her daughter.

On September 2, 2021, petitioner's security system alerted her to motion at her front door of the Rockford property at 10:17 p.m., 10:20 p.m., and 10:47 p.m. Petitioner contended that respondent wore a hat, mask, and gloves when he looked in petitioner's front door, foyer, and bedroom windows. A neighbor also had photographs of respondent riding a bike toward petitioner's cottage at 10:11 p.m. and leaving at 10:56 p.m. As a result of these allegations, the trial court issued a show cause order to address the claimed violation of the PPO.

Respondent was charged with misdemeanor domestic violence arising from the removal of petitioner's rings. But, the prosecutor declined to pursue the violation of the PPO. Consequently, petitioner retained private counsel to pursue the PPO violations. After plea negotiations with the prosecution and respondent's retention of new counsel, respondent entered a plea in the criminal matter. And, on March 29, 2022, respondent pleaded no contest to violating the PPO.[1]

Thereafter, petitioner moved for attorney fees under MCR 3.206(D)(2)(b) with a summation of the services provided by petitioner's counsel. Respondent objected to the payment of attorney fees and alleged that petitioner relied on an inapplicable court rule. The trial court ultimately awarded petitioner $8,250 in attorney fees. Respondent appeals by delayed leave granted[2] from the order granting petitioner's request for attorney fees.

## II. STANDARD OF REVIEW

A trial court's decision addressing a contempt motion is reviewed for an abuse of discretion. *DeGeorge v Warheit*, 276 Mich App 587, 591; 741 NW2d 384 (2007). "The decision to award attorney fees as compensation for losses incurred because of the contempt and the determination of the reasonable amount of the fees are reviewed for an abuse of discretion." *In re Contempt of Henry*, 282 Mich App at 684-685 (citation omitted). An abuse of discretion does not occur if the trial court's decision presents an outcome within the range of principled outcomes. *Id*. The trial court's factual findings pertaining to contempt are reviewed for clear error. *DeGeorge*,

---

[1] The parties made various representations addressing why the prosecutor only pursued the misdemeanor criminal charge and the sufficiency of the proofs to support the violation of the PPO. Nonetheless, respondent pleaded in the criminal case as well as to the violation of the PPO.

[2] *LAC v GLS*, unpublished order of the Court of Appeals, entered July 12, 2023 (Docket No. 365120).

276 Mich App at 591 (citation omitted). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

An issue of statutory interpretation presents a question of law that the appellate court reviews de novo. *Buhl v City of Oak Park*, 507 Mich 236, 242; 968 NW2d 348 (2021). When interpreting a statute, the ultimate goal is to give effect to the Legislature's intent. *Milne v Robinson*, 513 Mich 1, 12; 6 NW3d 40 (2024). The most reliable evidence of legislative intent is the plain language of the statute. *Klooster v City of Charlevoix*, 488 Mich 289, 296; 795 NW2d 578 (2011). If the language of the statute is clear and unambiguous, it is presumed that the Legislature intended the meaning plainly expressed in the statute. *Gardner v Dep't of Treasury*, 498 Mich 1, 6; 869 NW2d 199 (2015). "In construing a legislative enactment we are not at liberty to choose a construction that implements any rational purpose but, rather, must choose the construction which implements the legislative purpose perceived from the language and the context in which it is used." *Le Gassick v Univ of Mich Regents*, 330 Mich App 487, 495-496; 948 NW2d 452 (2019) (citation omitted).

> Once the intention of the Legislature is discovered, this intent prevails regardless of any conflicting rule of statutory construction. Courts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there. The omission of a provision should be construed as intentional. It is a well-known principle that the Legislature is presumed to be aware of, and thus to have considered the effect on, all existing statutes when enacting new laws. The Legislature is presumed to act with knowledge of judicial statutory interpretations. When statutory provisions are construed by the court and the Legislature reenacts the statute, it is assumed that the Legislature acquiesced to the judicial interpretation. Similarly, when a judicial decision is released and the Legislature acts to change the language of the statute, it is strong evidence of the disapproval of the judicial interpretation. Every word of a statute should be given meaning and no words should be treated as surplusage or rendered nugatory if at all possible. [*GMAC LLC v Dep't of Treasury*, 286 Mich App 365, 372-373; 781 NW2d 310 (2009) (quotation marks and citations omitted).]

"[I]t is the province of the Legislature to acquiesce in the judicial interpretation of a statute or to amend the legislation to obviate a judicial interpretation." *Id.* at 380.

The general rule is that when two statutes conflict, the more specific statute prevails over the general one. *Milne*, 513 Mich at 12. To resolve a statutory conflict, the dispositive issue is how the Legislature intended the statutes interact. *Id*. The rationale underlying this rule of interpretation is that giving the general statute priority would render the more specific provision nugatory and ineffectual. *Id*. at 13. The use of the term "shall" denotes mandatory, not discretionary action. *Yachcik v Yachcik*, 319 Mich App 24, 36; 900 NW2d 113 (2017) (citation omitted). "Accordingly, when a statute provides that a court 'shall consider' specific factors or criteria in rendering its decision, consideration of each of those factors is mandatory." *Id*. at 36-37 (citation omitted).

The construction and interpretation of the court rules also presents an issue reviewed de novo. *Associated Builders & Contractors of Mich v Dep't of Technology, Management, & Budget*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363601), slip op at 2. The constitutional authority to establish the practice and procedure in the court rules is vested in our Supreme Court. *In re Petition of Tuscola Co Treasurer for Foreclosure*, 317 Mich App 688, 700; 895 569 (2016) ("The Supreme Court shall by general rules establish, modify, amend and simplify the practice and procedure in all courts of this state." Const 1963, art 6, § 5). This judicial function also constitutionally empowers the courts to make their own rules of evidence, subject to constitutional limitations. *McDougall v Schanz*, 461 Mich 15, 29; 597 NW2d 148 (1999) (citation omitted). A court rule may control matters upon which a statute is silent, but a court rule may not control matters specifically addressed by the statutory act. See *Muci v State Farm Auto Ins Co*, 478 Mich 178, 190; 732 NW2d 88 (2007). Although our Supreme Court is authorized to prescribe the general rules that "establish, modify, amend, and simplify the practice and procedure" in all Michigan courts, the Legislature retains the authority to address issues of substantive law. *In re Petition of Tuscola Co Treasurer*, 317 Mich App at 701 (citation omitted). When a conflict exists between a court rule and a statute, the courts must determine whether there is an impermissible statutory infringement upon our Supreme Court's constitutional authority to enact rules governing practice and procedure. *McDougall*, 461 Mich at 25-26. "[A] statute is substantive when . . . it concerns a matter that has as its basis something other than court administration[.]" *Muci*, 478 Mich at 191 (quotation marks and citation omitted). "In other words, if the statutes in question are grounded on policy considerations other than regulating the procedural operations of the judiciary, they do not impermissibly infringe the Supreme Court's rulemaking authority." *Zdrojewski v Murphy*, 254 Mich App 50, 82; 657 NW2d 721 (2002).

## III. ANALYSIS

### A. THE CONTEMPT STATUTES AND APPLICABLE CASELAW

In MCL 600.1715, the Legislature addressed contempt and the applicable punishment:

> (1) Except as otherwise provided by law, punishment for contempt may be a fine of not more than $7,500.00, or imprisonment which, except in those cases where the commitment is for the omission to perform an act or duty which is still within the power of the person to perform shall not exceed 93 days, or both, in the discretion of the court. The court may place an individual who is guilty of criminal contempt on probation in the manner provided for persons guilty of a misdemeanor as provided in chapter XI of the code of criminal procedure, 1927 PA 175, MCL 771.1 to 771.14a.
>
> (2) If the contempt consists of the omission to perform some act or duty that is still within the power of the person to perform, the imprisonment shall be terminated when the person performs the act or duty or no longer has the power to perform the act or duty, which shall be specified in the order of commitment, and pays the fine, costs, and expenses of the proceedings, which shall be specified in the order of commitment.

In MCL 600.1721, the Legislature authorized the payment of damages for contempt and the effect of payment:

> If the alleged misconduct has caused an actual loss or injury to any person the court shall order the defendant to pay such person a sufficient sum to indemnify him, in addition to the other penalties which are imposed upon the defendant. The payment and acceptance of this sum is an absolute bar to any action by the aggrieved party to recover damages for the loss or injury.

The use of the term "shall" in MCL 600.1721 denotes mandatory, not discretionary action. *Yachcik*, 319 Mich App at 36. And if contemptuous misconduct caused an actual loss or injury, the trial court was required to order the respondent to indemnify the petitioner in addition to incurring other penalties. *Id*. at 36-37. The plain language of MCL 600.1721 reflects the Legislature's recognition that acceptance of indemnification damages for contempt "functions as a substitute for any underlying claim and, thus, bars monetary recovery that could have been achieved in a separate cause of action." *In re Bradley Estate*, 494 Mich 367, 392-393; 835 NW2d 545 (2013). Accordingly, by accepting indemnification damages, such as attorney fees for prosecuting the violation of the PPO, petitioner was barred from filing a civil action seeking damages for the initial assault. *Id*.

In *Taylor*, 277 Mich App at 89, the plaintiff, a candidate for city council, alleged that the defendants, the city clerk and election commission, engaged in election irregularities. Specifically, the plaintiff asserted that the defendants improperly certified a candidate for city council and wrongfully mailed approximately 150,000 applications for absentee voter ballots. The trial court enjoined the defendants from mailing unsolicited absentee voter ballot applications for use in the general election. Despite the injunction, the mailing occurred, and the plaintiff sought to hold the defendants in contempt for violating the court's ruling. *Id*. at 89-90. After conducting a hearing and admitting evidence, the trial court found the city clerk in criminal contempt. *Id*. at 90-91. Following the general election, the plaintiff moved for a permanent injunction to preclude further unsolicited mailings of absentee voter applications and for an award of attorney fees incurred from the defendants' contemptuous actions. The trial court granted the plaintiff the requested relief. *Id*. at 92-93.

On appeal, this Court affirmed the attorney fee award for criminal contempt, stating:

> Defendants first argue that MCL 600.1721 does not authorize a trial court to order an award of attorney fees as a remedy for criminal contempt. We disagree. MCL 600.1721 provides that, "[i]f the alleged misconduct has caused an actual loss or injury to any person the court shall order the defendant to pay such person a sufficient sum to indemnify him, in addition to the other penalties which are imposed upon the defendant." Thus, under a plain reading of MCL 600.1721, a court must order a person found to be in contempt of court to indemnify any person who suffers an actual loss or injury as a result of the contemnor's misconduct. See *In re Contempt of Rochlin*, 186 Mich App 639, 650; 465 NW2d 388 (1990). The sum required by MCL 600.1721 "may include attorney fees that occurred as a result of the other party's contemptuous conduct." *Homestead Dev Co v Holly Twp*, 178 Mich App 239, 245-246; 443 NW2d 385 (1989).

> Because MCL 600.1721 does not make a distinction between civil and criminal contempt, but rather requires a trial court to order a contemnor to indemnify any person who suffers an "actual loss or injury" caused by the contemnor's "misconduct," we hold that the indemnification sanction mandated by MCL 600.1721 applies even when a trial court imposes a punitive (i.e., criminal) sanction on a contemnor. The trial court did not err when it ordered defendants to indemnify plaintiff for the losses she actually suffered as a result of defendants' contemptuous conduct. [*Taylor*, 277 Mich App at 100.]

Attorney fee awards were also upheld for criminal contempt for an appellant engaged in a series of contemptuous violations in her representation of a client, *In re Contempt of Henry*, 282 Mich App at 683-686, and for a township board that failed to consider the plaintiff's rezoning request and commission recommendation contrary to court order and statutory zoning requirements, *Homestead Dev Co*, 178 Mich App at 242-245.

The plain language of MCL 600.1721 does not contain any limitation on the type of contempt to which it applies, *Klooster*, 488 Mich at 296, and it has been applied to criminal contempt, *In re Contempt of Henry*, 282 Mich App at 684-685; *Taylor*, 277 Mich App at 100; *Homestead Dev Co*, 178 Mich App at 245-246. Despite this caselaw and the rules of statutory interpretation, the Legislature has not acted to limit the plain language of MCL 600.1721 to confine its implementation to civil contempt or to eliminate the indemnification of attorney fees incurred in prosecuting the contemptuous conduct. See *GMAC LLC*, 286 Mich App at 380.

## B. PPO STATUTORY AND COURT RULE PENALTIES

Respondent claims that MCL 600.1715 and MCL 600.1721 cannot be used as the foundation for attorney fees for criminal contempt. He contends that the court rule, MCR 3.708, is the only consideration and does not allow for attorney fees. I disagree.

MCL 600.2950 governs PPOs issued to restrain or enjoin spouses or individuals in dating relationships. Specifically, an individual may petition the family court to enter a PPO to restrain or enjoin a spouse or an individual with whom he or she has or has had a dating relationship from accessing premises, engaging in acts to physically harm a named individual or threatening to kill or injure a named individual. MCL 600.2950(1)(a)-(c).[3] MCL 600.2950(23) sets forth the penalty for criminal contempt and states in pertinent part:

---

[3] MCL 600.2950 provides:

> (1) Except as otherwise provided in subsections (26) and (27), by commencing an independent action to obtain relief under this section, by joining a claim to an action, or by filing a motion in an action in which the petitioner and the individual to be restrained or enjoined are parties, an individual may petition the family division of circuit court to enter a personal protection order to restrain or enjoin a spouse, a former spouse, an individual with whom he or she has had a child in common, an individual with whom he or she has or has had a dating

-6-

An individual who is 17 years of age or older and who refuses or fails to comply with a personal protection order under this section is subject to the criminal contempt powers of the court and, if found guilty, must be imprisoned for not more than 93 days and may be fined not more than $500.00. . . . The criminal penalty provided under this section may be imposed in addition to a penalty that may be imposed for another criminal offense arising from the same conduct.

MCR 3.708 addresses contempt proceedings for violation of PPOs and states in pertinent part:

**(G) Prosecution After Arrest.**  In a criminal contempt proceeding commenced under MCL 764.15b the prosecuting attorney shall prosecute the proceeding unless the petitioner retains his or her own attorney for the criminal contempt proceeding.

\* \* \*

(H) (5) *Sentencing*.

(a) If the respondent pleads or is found guilty of criminal contempt, the court shall impose a sentence of incarceration for no more than 93 days and may impose a fine of not more than $500.00.

(b) If the respondent pleads or is found guilty of civil contempt, the court shall impose a fine or imprisonment as specified in MCL 600.1715 and 600.1721.

In addition to such a sentence, the court may impose other conditions in the personal protection order.

The principles of statutory interpretation apply to the interpretation of the court rules. *Tyler v Findling*, 508 Mich 364, 369; 972 NW2d 833 (2021).  This Court's primary goal is "to determine and effectuate the intent behind the rule." *Sumner v Gen Motors Corp (On Remand)*, 245 Mich App 653, 661; 633 NW2d 1 (2001).  When the language of the court rule is unambiguous, the appellate court will enforce the plain meaning of the rule.  *Tyler*, 508 Mich at 370.  When examining a court rule, each word and phrase must be given its common and ordinary meaning. *Dawley v Hall*, 501 Mich 166, 169; 905 NW2d 863 (2018).

---

relationship, or an individual residing or having resided in the same household as the petitioner from doing 1 or more of the following:

(a) Entering onto premises.

(b) Assaulting, attacking, beating, molesting, or wounding a named individual.

(c) Threatening to kill or physically injure a named individual.

As noted, a court rule may control matters upon which a statute is silent, but a court rule may not control matters specifically addressed by the statutory act. See *Muci*, 478 Mich at 190. Although our Supreme Court is authorized to prescribe the general rules that "establish, modify, amend, and simplify the practice and procedure" in all Michigan courts, the Legislature retains the authority to address issues of substantive law. *In re Petition of Tuscola Co Treasurer*, 317 Mich App at 701 (citation omitted). When a conflict exists between a court rule and a statute, the courts must determine whether there is an impermissible statutory infringement upon our Supreme Court's constitutional authority to enact rules governing practice and procedure. *McDougall*, 461 Mich at 25-26. But, court rules cannot be enacted "that establish, abrogate, or modify the substantive law." *Id*. at 27 (citation omitted). When a conflict exists between a statute and a court rule, the court rule prevails only if it governs a matter of practice and procedure. *Staff v Johnson*, 242 Mich App 521, 530; 619 NW2d 57 (2000).

Both MCL 600.2950(23) and MCR 3.708(H)(5)(a) address the *sentence* imposed for criminal contempt. It is readily apparent from the plain language from both the statute and the court rule that the sentence imposed for criminal contempt is limited to 93 days of incarceration and a fine of up to $500. MCL 600.2950(23) ("An individual . . . refuses or fails to comply with a personal protection order . . . is subject to the criminal contempt powers of the court and, if found guilty, must be imprisoned for not more than 93 days and may be fined not more than $500.00."); MCR 3.708(H)(5)(a) ("If the respondent pleads or is found guilty of criminal contempt, the court shall impose a sentence of incarceration for no more than 93 days and may impose a fine of not more than $500.00.").

The plain language of MCR 3.708(H)(5)(a) demonstrates that it is a sentencing provision and sets forth the procedural limitations on the sentence to be imposed. But, MCR 3.708(H)(5) acknowledges that there may be other conditions that the court may impose in the PPO. ("In addition to such a sentence, the court may impose other conditions in the personal protection order."). Although MCR 600.1721 is not expressly cited as part of the sentence for criminal contempt, this statute addresses indemnification to an individual injured by contemptuous misconduct. Because MCR 3.708(H)(5)(a) addresses the sentence for criminal contempt, there was no need to include the substantive remedies, such as indemnification, available to an injured party as delineated in MCL 600.1721.[4] Nonetheless, MCR 3.708 contemplated that there may be other conditions in conjunction with a sentence. And, if the inquiry of available remedies for criminal contempt was limited to an examination of MCR 3.708(H)(5)(a), and MCL 600.2950(23), it would render the specific indemnification provision nugatory. *Milne*, 513 Mich at 12. Because the sentencing court rule, MCR 3.708(H)(5)(a) is silent on other penalties, it may not control matters specifically addressed in MCL 600.1721. See *Muci*, 478 Mich at 190.

---

[4] This analysis is consistent with *O'Connor v Valcaniant*, unpublished per curiam opinion of the Court of Appeals, issued September 20, 2012 (Docket Nos. 206254; 206248). Although unpublished opinions are not binding authority, they may be considered instructive or persuasive. MCR 7.215(C)(1); *Paris Meadows LLC v City of Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010). Like the trial court, I conclude that the *O'Connor* decision is persuasive. Even so, I disagree with the trial court that MCR 3.206 provided a ground for awarding attorney fees.

Moreover, I would not adopt *Eldridge v Eldridge*, unpublished per curiam opinion of the Court of Appeals, issued October 28, 2008 (Docket No. 278470), in contradiction of published caselaw to the contrary. See *In re Contempt of Henry*, 282 Mich App at 684-685; *Taylor*, 277 Mich App at 100; *Homestead Dev Co*, 178 Mich App at 245-246. The *Eldridge* Court stated that the defendant contested an award of costs and attorney fees arising from a PPO show cause hearing. *Eldridge*, slip op at 2. But, the trial court only required that the defendant pay costs. Consequently, the *Eldridge* Court held that "it is not necessary to consider whether a trial court has the authority to award attorney fees in a case such as this." *Id*. Nonetheless, the *Eldridge* Court did not confine its holding to costs, but included language addressing attorney fees. *Id*. "Unlike holdings, [o]biter dicta are not binding precedent. Instead, they are statements that are unnecessary to determine the case at hand and, thus, lack the force of an adjudication." *Estate of Pearce v Eaton Co Rd Comm'n*, 507 Mich 183, 197; 968 NW2d 323 (2021). I would not adopt and extend the dicta of *Eldridge* under the circumstances.

Additionally, the *Eldridge* Court rejected an award of attorney fees by stating:

> Taxation of costs is generally not allowed absent authority flowing from a statute or court rule. *LaVene v Winnebago Industries*, 266 Mich App 470, 473; 702 NW2d 652 (2005). For criminal contempt, the sanctions are limited to a sentence of 93 days and a fine of $500, with no reference to the statutory sanctioning scheme. MCR 3.708(H)(5)(a). There is nothing in the sentencing scheme in MCR 3.708(H)(5) that expresses an abrogation of this general rule in the case of contempt as a result of a PPO violation. Moreover, the court rule distinguishes between the sentences available for criminal (subsection (a)) and civil (subsection (b)) contempt. In the case of civil contempt, the court rule explicitly adopts the sanctions provided in MCL 600.1715 and MCL 600.1721. MCR 3.708(H)(5)(b). The sanctions provided for criminal contempt are exclusive of the statutory sanctions referenced for civil contempt. See *Taylor v Currie*, 277 Mich App 85, 95-96; 743 NW2d 571 (2007) (expression of one thing is the exclusion of another). Therefore, criminal contempt sanctions under this rule do not include the indemnification provisions of MCL 600.1721. Accordingly, the court lacked authority in the court rules or statutes to tax a defendant for costs arising out of criminal contempt for violation of a PPO. [*Eldridge*, slip op at 2-3.]

The *Eldridge* Court's reference to the *Taylor* decision was contrary to the actual holding. The *Taylor* Court evaluated the city clerk's contention that she did not violate a court order, and in turn commit criminal contempt, by mass mailing unsolicited ballot applications because her actions were allegedly authorized by MCL 168.759(5). But, that statute merely authorized the city clerk to provide an application to anyone upon verbal or written request. The mass mailing did not fulfill her statutory duty because the provision of applications was limited to verbal or written requests and mass mailings were excluded under the maxim *expressio unius est exclusio alterius*, (the expression of one thing is the exclusion of another). *Taylor*, 277 Mich App at 95-96. Rather, the *Taylor* Court expressly held "that the indemnification sanction mandated by MCL 600.1721 applies even when a trial court imposes a punitive (i.e., criminal) sanction on a contemnor" and that indemnification includes attorney fees. *Taylor*, 277 Mich App at 100. Accordingly, an award of attorney fees did not violate the rule that they have a foundation in law. Rather, the attorney fees were rendered as indemnification. The *Eldridge* Court's analysis of the

*Taylor* decision is contrary to its actual holding and does not support excluding attorney fees from an indemnification award under MCL 600.1721.[5]

I would affirm.


/s/ Anica Letica

[5] Respondent repeatedly alleges that petitioner made a "choice" to pursue the contempt and even refers to petitioner as bringing a "private action" in retaining counsel for the criminal contempt proceeding. The insinuation that an award of attorney fees will incentivize petitioners to pursue criminal contempt is illogical.

It is unlikely that petitioners who have obtained a PPO to prevent a respondent's stalking or threatening conduct would voluntarily seek contact with their stalkers in a PPO violation hearing to obtain attorney fees. And, with the staffing of county prosecutors' offices reaching a crisis level, see <https://cms5.revize.com/revize/lapeer/PAAM%20Caseload%20Study%20April%2013%202022.pdf> (accessed July 23, 2024); <https://wwmt.com/news/local/michigan-prosecutors-seek-230m-address-critical-lawyer-shortage-wage-disparities-cass-allegan-county-public-defenders-fitz-koch-salaries-raises#> (accessed July 23, 2024), it is more likely that petitioners independently pursuing violations of PPO arise from necessity and protection, not as an attempt at financial gain. In fact, petitioner in this case sought $11,989.00 in attorney fees and the court awarded $8,250. Notably, she has not appeared in this appeal.

Additionally, stalking victims may civilly sue those who engage in stalking against them, including seeking "reasonable attorney fees. . . ." MCL 600.2954(1) ("A victim may maintain a civil action against an individual who engages in conduct . . . prohibited under [MCL 750.411h and MCL 750.411i], for damages incurred by the victim as a result of that conduct. A victim may also seek and be awarded exemplary damages, costs of the action, and reasonable attorney fees in an action brought under this section."). However, when a court orders a respondent to indemnify a PPO petitioner under MCL 600.1721 as part of a contempt order, "[t]he payment and acceptance of this sum is an absolute bar to any action by the aggrieved party to recover damages for the loss or injury." Stated otherwise, there is no added financial incentive for a PPO petitioner to pursue a contempt proceeding for a PPO violation.