# Order

**Michigan Supreme Court**
**Lansing, Michigan**

June 12, 2009

137997

STEPHEN J. SAFRANEK, EDWARD
C. LYONS, and PHILIP A. PUCILLO,
          Plaintiffs-Appellees,
v

THOMAS STEPHEN MONAGHAN,
          Defendant-Appellant,
and

BERNARD DOBRANSKI, and
AVE MARIA SCHOOL OF LAW,
          Defendants-Appellees,
and

FRIENDS OF AVE MARIA SCHOOL OF
LAW a/k/a AVE MARIA SCHOOL OF LAW
FOUNDATION, and AVE MARIA
FOUNDATION,
          Defendants.
_____/

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
Justices

SC: 137997
COA: 289237
Washtenaw CC: 07-001134-CZ

        By order of January 14, 2009, this Court granted immediate consideration and a stay of enforcement of the order entered by the Washtenaw Circuit Court on November 14, 2008. On order of the Court, the application for leave to appeal the December 29, 2008 order of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court. The stay of enforcement of the Washtenaw Circuit Court's November 14, 2008 order, ordered on January 14, 2009, is DISSOLVED.

        WEAVER, J. (*concurring*).
        I concur in the order denying leave to appeal in this case. I write separately to provide important background information concerning the defendant's repeated attempts to avoid producing his personal notes.[1]

_____

[1] I note further that the dissent improperly insinuates that the issue concerning the request for production of documents in this case is also an issue that should be addressed in the companion case of *Safranek v Monaghan,* Docket No. 138055.

Plaintiffs are former law professors at defendant Ave Maria School of Law. Plaintiffs claim that their employment was wrongfully terminated at Ave Maria in 2007 because they reported violations or suspected violations of law by Ave Maria. Plaintiffs brought suit against Ave Maria and others, including Thomas S. Monaghan, who is the chairperson of both the Ave Maria Board of Governors and the Ave Maria Foundation.

At the outset, the public should be made aware of the fact that defendant Monaghan's attempts to avoid the production of these personal notes have a long history. Plaintiffs first filed suit against the defendant, among others, in October 2007. On March 10, 2008, plaintiffs served document requests on the defendant's attorneys. Of particular importance to this appeal was plaintiffs' document Request 16, which asked the defendant to produce:

> All slips, note cards, index cards, or other paper format that Thomas S. Monaghan [defendant] carried on his person and/or used to log or record his thoughts and/or to record, as they occur to him, tasks, reminders, "to do" items, creative ideas or agenda items for himself or others. Mr. Monaghan made use of such writing during his taped deposition in this action, and on information and belief, makes the use of such writings part of his daily work practice and has kept the originals or transcriptions of such documents for decades. *Such request is limited to documents or portions of documents that relate to any matter raised in this litigation, including, without limitation, any material relating to any party in this action as well as any matter whatsoever involving AMSL [Ave Maria School of Law], AMU [Ave Maria University], AMC [Ave Maria College] or his investments or other interests in Florida.* [Emphasis added.]

The italicized language above limits the request for production to only those documents pertaining to the lawsuit; however, it appears that the defendant attempted to avoid or at least delay the production of the documents on the ground that the request was "overbroad" and "unduly burdensome" when, in fact, the request was appropriately limited to only those documents pertaining to the lawsuit. It is also pertinent that defendant Monaghan evidently failed to disclose that he possessed documents that might pertain to the lawsuit, specifically defendant's personal notes recorded on yellow legal pads. Indeed, defendant's own attorneys were apparently not aware of the existence of these personal notes at the time of the May 21, 2008, court hearing.

On May 21, 2008, the trial court held a hearing on defendant Monaghan's motion for a protective order and plaintiffs' motion to compel. In its bench ruling, the court stated, "The Court's ruling on that whole group of things is, that any reminder notes regarding the law school shall be produced." The defendant asserts that because the yellow legal pads were not specifically mentioned in the court's bench ruling, the ruling was limited to the orange travel itineraries. Although the ruling is apparently ambiguous,

there is no question that the trial judge's August 27, 2008, memorialization of her May 21, 2008, bench ruling pertained to all documents be they orange, green, or yellow:

> IT IS FURTHER ORDERED that defendant Monaghan shall produce documents responsive to Request 16, which may be limited to documents regarding the Ave Maria School of Law, its faculty/staff, named parties to the matter, and/or the move to Florida.

Yet even after this order for production was entered on August 27, 2008, the defendant managed to stall production of the documents further by objecting to how to produce them. Thus, there were hearings on these discovery motions on October 1, November 12, and December 17, 2008.

The trial court's November 14, 2008, order, relating back to the hearings on October 1 and November 12, explicitly detailed what was required of the defendant and read, in part as follows:

> A. Defendant Monaghan shall comply with the Court's order of August 27, 2008, and produce to plaintiffs' counsel by producing copies of all notes, of any description and/or date, which might reasonably contain matters (a) responsive to the plaintiffs' "Request 16," to which that Order refers, and (b) which pertain to the Ave Maria School of Law, its faculty/staff, named parties to this matter and/or the move to Florida. *Defendant shall produce any documents that are responsive to Request 16 . . . without regard to whether the document is an itinerary, included in a spiral-bound notebook, part of a legal or other pad of paper or loose, and without regard to the color of the paper.* [Emphasis added.]

Rather than comply with the trial court's November 14 order, defendant Monaghan filed a motion on November 21, to stay the effect of the November 14 order while he pursued an application for leave to file an interlocutory appeal in the Court of Appeals. The hearing on the defendant's motion to stay was held on December 17 and the trial judge warned the defendant that if he did not produce the documents within seven days, she would hold him in contempt of court and order sanctions of $2,500.

On December 23, the Court of Appeals stayed the trial court proceedings until the resolution of the defendant's appeal and, on December 29, the Court of Appeals lifted the stay and denied the defendant's application for leave to appeal. The defendant filed an application for leave to appeal the Court of Appeals order less than a week later, on January 2, 2009, nearly nine months after plaintiffs made their request for all documents pertaining to the lawsuit.

In light of the history of plaintiffs' repeated attempts to obtain copies of defendant's relevant personal notes, the trial judge did not abuse her discretion in issuing

the November 14, 2008, order. Over the course of eight months, defendant did not produce documents in response to plaintiffs' requests. Even after the trial court issued the order on August 27, 2008, defendant did not offer to produce the relevant notes on yellow legal pads, but contended that the production of those notes had not been ordered.

While it is understandable why defendant does not want to produce notes revealing his private thoughts on subjects unrelated to this lawsuit, *some of his notes* might be relevant to this lawsuit. To the extent any of those notes are relevant, he should have produced them long before the hearing on October 1, 2008.

Thus, in light of defendant Monaghan's failure to produce the relevant notes voluntarily, the trial judge was justified in taking action to force him to do so. As noted by the judge on page five of the November 14, 2008, order: "These documents . . . should have been produced without objection months ago—*many* months ago . . . ." Thus, because the trial judge did not abuse her discretion in issuing the November 14, 2008, order, I concur in the order denying defendants' application for leave to appeal.

MARKMAN, J. (*dissenting*).

I dissent. This case involves a trial court's sweeping, over-broad, and inherently unfair order, which forces defendant to produce over 10 years of personal notes detailing his most intimate and private thoughts concerning religion, politics, people with whom he has met and with whom he associates, his family, his creative ideas, and his business dealings, *regardless of whether these notes are discoverable or responsive to plaintiffs' document request*.[2] Because I believe that such a disregard for both the court rules of this state and defendant's privacy raises serious questions about whether the trial court abused its discretion, I would remand this matter to the Court of Appeals for further consideration.

Under MCR 2.302(B)(1), parties may obtain discovery regarding any "relevant" information that "appears reasonably calculated to lead to discovery of admissible evidence." "[We review] a trial court's decision regarding discovery for an abuse of discretion." *Muci v State Farm Mut Automobile Ins Co*, 478 Mich 178, 200 (2007). Significantly, a trial court must "ensure that discovery requests are fair and legitimate by providing that discovery may be circumscribed to prevent excessive, abusive, irrelevant, or unduly burdensome requests." *Hamed v Wayne Co*, 271 Mich App 106, 110 (2006), citing MCR 2.302(C).

---

[2] Although the trial court's order for production is also subject to a protective order, the efficacy of that protective order, as discussed below, has been seriously called into question and in no way alters the onerous burden to produce over 10 years of largely irrelevant notes that the trial court has now imposed on defendant.

Defendant is apparently a prolific notetaker and, over the past decade, has kept notes on three separate mediums -- orange paper, green notebooks, and yellow legal pads. The genesis of the current dispute lies in plaintiffs' requests for production (Request 16), which sought "Monaghan's daily reminders, his daily notes to himself," to which defendant objected that plaintiffs' request was "over-broad." During a May 21, 2008, hearing on this matter, defense counsel sought clarification from the trial court concerning whether the request only "applies to the orange and the [green] notebook items, if it says law school." The court stated, "Right," "that's what they asked, aren't those called the reminder notes, the orange ones?" Thus, the court's ruling specifically limited plaintiffs' Request 16 to defendant's *orange* notes, which limitation was then memorialized in an August 27, 2008, order that stated "defendant Monaghan shall produce documents responsive to Request 16, which may be limited to documents regarding Ave Maria School of Law, its faculty/staff, named parties to this matter, and/or the move to Florida."

Defendant complied with the court's order by making the orange notes available to plaintiffs' counsel, and voluntarily producing relevant portions of the green spiral notebooks. However, plaintiffs' counsel then filed a motion to compel production of *all* notes, claiming that defendant had violated the trial court's August 27, 2008, order by only producing the orange notes since "[t]he court d[id]n't say anything about [green] spiral versus orange versus yellow or white. [Defendant] just decided that." Despite the fact that the court had specifically instructed defendant that he was only required to produce the orange notes, the court agreed with plaintiffs' counsel and issued a subsequent order on November 14, 2008, that required defendant to produce *all* notes "wholesale" pertaining to Request 16 "without redaction . . . and without regard to whether the document is an itinerary, included in a spiral-bound [green] notebook, part of a [yellow] legal or other [orange] pad or paper or loose, and without regard to the color of the paper." Additionally, the order also stated that "*plaintiffs* shall redact any part of any page of notes that contains both responsive and non-responsive materials and make such redactions known to defendant." (Emphasis added.) Thus, defendant must now produce over 10 years of notes regardless of their relevancy or discoverability.

This order appears to be directly contrary to MCR 2.302(B)(1), inasmuch as plaintiffs have offered no discernable reason why *all* of defendant's notes, which include his religious beliefs, private thoughts, personal contacts, etc., are "reasonably calculated to lead to discovery of admissible evidence" in regard to the instant litigation. Instead, the court's order seems likely to subject defendant to unwarranted "annoyance, embarrassment, oppression, [and] undue burden," MCR 2.302(C)(1), the very result our court rules are intended to prevent. Thus, I believe there are serious questions concerning whether the court abused its discretion. Further, I find it even more troubling that the court affirmatively represented to defendant that plaintiffs' Request 16 pertained only to the orange notes, but then essentially penalized him for not producing *all* types of relevant notes by now requiring that defendant produce all his notes "wholesale" to

plaintiffs' attorney. This seems extraordinarily unfair to defendant and, in my judgment, warrants further consideration by the Court of Appeals.[3]

Additionally, plaintiffs' recent appeal to this Court in the companion case of *Safranek v Monaghan*, Docket No. 138055, raises further concerns that the trial court's production order risks compromising defendant's legitimate privacy concerns. During defendant's intermediate appeal in the instant case, plaintiffs *publically* disclosed five pages of defendant's personal notes that had been designated as "confidential." Because this violated the trial court's protective order, which requires that plaintiffs take "reasonably appropriate steps . . . to preserve the confidentiality of information [designated as] confidential," defendant moved to have those documents stricken from the record. Recognizing that the trial court specifically "require[d defendant] to produce [his notes] *subject to the protective order*," the Court of Appeals ordered that notes designated as "confidential" be stricken from the record. The court also specified, however, that these documents could still be used in the trial court if the trial court found them to be relevant-- a determination that has not yet been made. Nonetheless, plaintiffs have appealed that decision to this Court in Docket No. 138055. In doing so, they argued that these notes are "matters of which the public generally has a right to know," which is only true in the event the trial court concludes that those documents are *relevant* to the issues in this case. There is no public "right to know" the personal beliefs and attitudes of a person simply because that person has become a party to a lawsuit, unless such beliefs and attitudes are materially relevant to the lawsuit.

In other words, plaintiffs have appealed whether defendant's notes, which plaintiffs may still attempt to introduce at trial, should be made public *before* any determination by the trial court that those documents are indeed *relevant* to the subject matter of plaintiffs' claim. Plaintiffs' interest in publically disclosing the contents of defendant's personal notes in this fashion is troubling, and lends strength to the concerns raised by defendant in this appeal, which is that plaintiffs wish to disclose the substance of even *irrelevant* notes apparently for no other purpose than to publically denigrate defendant's personal beliefs and attitudes regarding politics, religion, friends, etc. These personal beliefs and attitudes have no obvious relationship to the issues involved in the

---

[3] In light of the trial court's ruling that defendant, in response to Request 16, was *only* required to produce the orange notes, it is puzzling how Justice Weaver in her concurrence could assert that this ruling was "ambiguous." How could the trial court have been any *more* clear that defendant was required only to produce his orange notes? This misapprehension on Justice Weaver's part also explains her misapprehension concerning defendant's arguments that he was unfairly treated by being required to produce *all* of his notes "wholesale," in apparent response to having violated the initial production order. Finally, even if a litigant *has* failed to comply with a production order, since when is the appropriate remedy to require the production of irrelevant documents?

instant lawsuit, and are properly made publicly available only after a determination of relevance and materiality.

Thus, defendant's concerns appear not to be unwarranted.[4]  A party should not have to undergo an invasion of privacy of this sort in order to defend himself in civil litigation in this state.  Therefore, I would remand this matter to the Court of Appeals to consider the propriety of the trial court's November 14, 2008, order.  However, because the majority does not concur with this position, I would respectfully urge the trial court to carefully review and reconsider the breadth of its production order.

CORRIGAN and YOUNG, JJ., join the statement of MARKMAN, J.

---

[4] To further emphasize defendant's concern regarding the trial court's production order, plaintiffs have acknowledged providing *Ave Watch*, a public website that is apparently antagonistic to defendant, with copies of defendant's notes that they consider relevant to this litigation.  However, defendant has alleged that one of his notes, which had not yet been filed with the trial court and that defendant had not been afforded an opportunity to designate as "confidential," was provided to *Ave Watch.*  Defendant alleged that plaintiffs' counsel used her cell phone to take a picture of this document, which she then sent to *Ave Watch.*  Plaintiffs' counsel denied this claim and stated that "I'm not even savvy enough to get this thing.  I barely can print a blurry thing off my phone.  But even if I had I wouldn't have provided it to [*Ave Watch*]."  However, the note at issue *did* appear on *Ave Watch*, http://avewatch.com/?p=89 (accessed June 1, 2009), accompanied by the following narrative:

> [Plaintiffs' counsel], apparently, was visiting [defendant]'s office in accordance with an earlier Court Order to produce documents.  [Plaintiffs' counsel] was allowed to view only a select subset of [defendant]'s personal notes, and was then denied a request to have any of the notes copied.  Why?  One sample was preserved as a photo on [plaintiffs' counsel's] cell phone.

This note stated, "November 4 Goals; 5 down, 6 to go.  2 leaders gone.  Now they are in the minority."



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 12, 2009

Clerk

p0609