*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ALIAMA X. SCHAUMANN-BELTRAN,

       Plaintiff-Appellee,

v

JOSEPH GEMMETE, M.D.,

       Defendant-Appellant.

UNPUBLISHED
January 5, 2023

No. 347683
Washtenaw Circuit Court
LC No. 17-000132-NH

ALIAMA X. SCHAUMANN-BELTRAN,

       Plaintiff-Appellee,

v

UNIVERSITY OF MICHIGAN REGENTS, doing
business as UNIVERSITY OF MICHIGAN
HEALTH SYSTEM, also known as MICHIGAN
MEDICINE, UNIVERSITY OF MICHIGAN
MEDICAL CENTER, and C.S. MOTT
CHILDREN'S HOSPITAL,

       Defendants-Appellants.

No. 347684
Court of Claims
LC No. 17-000038-MH

Before: MARKEY, P.J., and SERVITTO and GADOLA, JJ.

ON REMAND

PER CURIAM.

       This interlocutory appeal returns to this Court on remand from our Supreme Court for consideration of defendants' contention that the trial court abused its discretion by directing that plaintiff's counsel may videorecord the neuropsychological examination to be conducted by

-1-

defendants' neuropsychology expert. We conclude that the trial court did not abuse its discretion and affirm the trial court's order.

## I. FACTS

When this case was previously before this Court, we summarized the underlying facts as follows:

> Defendant Joseph Gemmete, M.D., practices within the University of Michigan Health System, now referred to as Michigan Medicine. In 2014, Dr. Gemmete diagnosed plaintiff, Aliama X. Schaumann-Beltran, who was then a minor, as suffering from a vascular malformation in her left forearm, wrist, and hand known as venous malformation, which is an abnormal collection of veins. Dr. Gemmete recommended a procedure known as sclerotherapy, and Aliama's parents agreed to the procedure.

> Dr. Gemmete performed the sclerotherapy and allegedly injected bleomycin, a chemotherapy drug not approved by the FDA for use in sclerotherapy, into Aliama's vascular malformation. He also allegedly injected sodium tetradecyl sulfate into the vascular formation. Over the course of the following month, Aliama's left index and middle fingers contracted and turned various shades of blue, white, and purple, and she experienced a decrease in sensation in her left hand. Additional surgeries were performed, and ultimately, doctors amputated Aliama's left index and middle fingers, which had become black.

> Following the initial surgery, Dr. Gemmete allegedly accused Aliama of drug abuse, accused Aliama's parents of medical neglect, and allegedly directed someone at defendant C.S. Mott Children's Hospital to file a medical neglect complaint against Aliama's parents with Child Protective Services. In addition, during a meeting with Aliama's family, Dr. Gemmete allegedly shouted at Aliama's sister while jabbing his finger close to her face.

> Plaintiff initiated a medical malpractice action against Dr. Gemmete in the Washtenaw Circuit Court. Plaintiff also initiated a medical malpractice action in the Court of Claims against defendants, The Board of Regents of the University of Michigan, d/b/a University of Michigan Health System (now Michigan Medicine), the University of Michigan Medical Center, and C.S. Mott Children's Hospital, seeking recovery under a theory of vicarious liability. Plaintiff, her parents, and her sister also initiated an action against Dr. Gemmete in the Washtenaw Circuit Court alleging defamation and assault. Upon stipulation of the parties, the Court of Claims transferred the case before that court to the Washtenaw Circuit Court where it was consolidated with the two cases before the circuit court.

> Before the trial court, the parties agreed that Aliama would submit to a neuropsychological evaluation to be performed by defendants' neuropsychological expert, Jennifer Huffman, Ph.D. Defendants, however, did not agree to plaintiff's requests that her attorney be present during the evaluation and that the evaluation

be videorecorded. Defendants filed a motion to compel a physical and mental examination under MCR 2.311(A), and also sought a protective order under MCR 2.302(C). Defendants argued that third-party observers and videorecording of the testing would be intrusive, would affect the performance of the evaluation, would undermine the validity of the findings, and would violate the ethical standards of practice for psychologists in Michigan. Defendants supported the motion with the affidavit of Dr. Huffman, attesting that she would withdraw from the evaluation rather than violate her ethical duties by testing plaintiff while a third-party was allowed to observe the testing, either directly or indirectly. Defendants also supported their motion with medical literature defending their position that third parties should not observe psychological testing.

The trial court granted defendants' motion in part and ordered plaintiff to participate in the neuropsychological evaluation by defendants' expert under MCR 2.311(A). The trial court, however, also ordered that plaintiff would be allowed to video record the evaluation in lieu of having her attorney present. The trial court explained that it was unconvinced that the presence of a camera would give rise to any ethical concern or affect the validity of the testing. [*Schaumann-Beltran v Joseph Gemmete, MD*, 335 Mich App 41, 43-45; 966 NW2d 172 (2020) (footnotes omitted), rev'd 509 Mich 979 (2022).]

This Court thereafter granted defendants leave to appeal the order of the trial court permitting plaintiff to videorecord the examination. On appeal, this Court concluded that the trial court lacked authority to order videorecording of the examination under MCR 2.311(A), reasoning that MCR 2.311(A) authorizes a trial court to permit the attorney for the person to be examined to be present at the examination, but does not authorize the trial court to permit the videorecording of the examination. *Schaumann-Beltran*, 335 Mich App at 48. Accordingly, this Court reversed the trial court's decision and remanded to the trial court for further proceedings.

Plaintiff sought leave to appeal this Court's decision to the Michigan Supreme Court. In lieu of granting leave to appeal, our Supreme Court reversed this Court's decision, concluding that "whether to videorecord the examination is plainly a 'condition' of the exam [under MCR 2.311(A)] and is therefore within the authority of the circuit court to direct." *Schaumann-Beltran v Joseph Gemmete, MD*, 509 Mich 979 (2022). The Supreme Court remanded the matter to this Court to address arguments made by defendants that were not previously considered by this Court, specifically whether the trial court's order allowing videorecording was an abuse of the trial court's discretion under the facts of this case. *Id.* at 980.

## II. DISCUSSION

We review for an abuse of discretion the conditions imposed upon a medical examination by a trial court under MCR 2.311(A). See *Muci v State Farm Mut Auto Ins Co*, 478 Mich 178, 180; 732 NW2d 88 (2007). A trial court abuses its discretion when it chooses an outcome outside the range of principled outcomes. *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016).

Defendants contend that the trial court abused its discretion by ordering vidoerecording of the examination. They argue that vidoerecording was not warranted in this case because plaintiff

-3-

failed to demonstrate "good cause" for videorecording under the standards for a protective order under MCR 2.302(C). We disagree that plaintiff was required to demonstrate good cause. MCR 2.311(A) provides:

> When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental or blood examination by a physician (or other appropriate professional) or to produce for examination the person in the party's custody or legal control. The order may be entered only on motion for good cause with notice to the person to be examined and to all parties. The order must specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made, and may provide that the attorney for the person to be examined may be present at the examination.

Defendants moved the trial court for an examination under MCR 2.311(A). Under MCR 2.311(A), the trial court has discretion to order an individual to undergo a mental or physical examination and to impose conditions on that examination. *Schaumann-Beltran*, 509 Mich at 979. The burden under MCR 2.311(A) to demonstrate good cause is on the party seeking an examination. Defendants, as the parties seeking to compel the examination, thus had the burden to show good cause for entry of the order. See MCR 2.311(A).

When ordering an examination under MCR 2.311(A), the trial court must specify the conditions of the examination; our Supreme Court has held that a condition of the examination may include videorecording, as determined by the trial court within its discretion. *Schaumann-Beltran*, 509 Mich at 979. Defendants assert that any requests for conditions, such as videorecording, are in effect a request for a protective order, implicating MCR 2.302(C), which requires the party seeking a protective order to make a showing of good cause. However, MCR 2.302(C) does not apply; the trial court's authority to impose conditions for an examination is derived from MCR 2.311(A), and under that court rule the trial court may order videorecording as a condition of the examination. *Schaumann-Beltran*, 509 Mich at 979. The court rule governing examinations "is all inclusive and provides the safeguards necessary to protect the interests of a person to be examined by a doctor for the opposing side." *Nemes v Smith*, 37 Mich App 124, 131; 194 NW2d 440 (1971). Plaintiff did not, and was not required to, move for a protective order in order for the trial court to make videorecording a condition of an examination under MCR 2.311(A). Accordingly, the good-cause burden in MCR 2.302(C) does not apply to plaintiff.

Defendants also urge that, relying upon federal standards for medical examinations, the videorecording of examinations should be disfavored and that plaintiff should be required to show a "compelling" reason for videorecording. "Because Michigan procedural rules are generally modeled after federal rules, in the absence of state authority, this Court may properly look to comparable federal rules and cases interpreting those rules to ascertain the intent of a given state rule." *Bush v Beemer*, 224 Mich App 457, 461; 569 NW2d 636 (1997) (citations omitted). However, the comparable federal rule, FR Civ P 35, materially differs from MCR 2.311(A). FR Civ P 35 states, in relevant part:

> (a) Order for an Examination.

(1) In General. The court where the action is pending may order a party whose mental or physical condition—including blood group—is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.

(2) Motion and Notice; Contents of the Order. The order:

(A) may be made only on motion for good cause and on notice to all parties and the person to be examined; and

(B) must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.

Unlike MCR 2.311(A), the federal rule makes no provision for the presence of a third-party, such as an attorney, at an examination. In the absence of clear authorization for the presence of third parties, the majority rule among federal courts interpreting FR Civ P 35 is that courts "may, and often should, exclude third-party observers, including counsel, from medical or psychiatric evaluations." *Flack v Nutribullet, LLC*, 333 FRD 508, 517 (CD Cal, 2019) (quotation marks and citations omitted). Indeed, most federal courts "start with a presumption against the presence of third persons, and then go on to consider whether special circumstances have been demonstrated in a particular case." *Smolko v Unimark Lowboy Trans, LLC*, 327 FRD 59, 62 (MD Pa, 2018) (quotation marks and citation omitted). In this context, the party requesting the presence of a third party, or videorecording, is required to justify that request with a showing of "good cause" or exceptional circumstances. See *Flack*, 333 FRD at 517-518 (citations omitted).

Defendants urge this Court to follow the federal disinclination toward videorecording and third-party observation. However, unlike its federal counterpart, MCR 2.311(A) expressly contemplates the presence of third parties, and videorecording is a permitted condition under that rule within the discretion of the trial court. *Schaumann-Beltran*, 509 Mich at 979. MCR 2.311(A) does not impose a presumption against third parties or videotaping or that a party must make a compelling showing before the trial court may impose such conditions. Given the differences between MCR 2.311(A) and FR Civ P 35, we decline to rely on federal caselaw to support disfavoring videorecording.

Defendants argue that the trial court perfunctorily ordered the videorecording without considering that the monitoring of the examination by a third person, whether in person or electronically, is not mandated by the court rule but rather is permissive within the discretion of the trial court. Defendants argue that in doing so, the trial court overlooked scientific information that indicates that monitoring by any third person, even electronically, violates professional norms and affects the outcome of the examination. Defendants also maintain that videorecording is not warranted in this case because medical professionals should be presumed to act with integrity and to adhere to professional standards, offering sufficient protection to plaintiff. See *Muci*, 478 Mich at 192 ("Physicians are presumed to be bound by the methodologies of their profession and by

principles of professional integrity.").[1] By contrast, plaintiff asserts that video recording is warranted given the inherently adversarial nature of the examination in the context of litigation. See *Feld v Robert & Charles Beauty Salon*, 435 Mich 352, 368-369; 459 NW2d 279 (1990) (BOYLE, J., concurring). Plaintiff suggests that videorecording is necessary to protect her interests and to ensure an accurate record of the examination.

Contrary to defendants' assertions that the trial court did not adequately consider the parties' interests in this case, a review of the record suggests that the trial court considered the parties' respective positions and the relevant facts before ordering videorecording of the examination. There is no indication that the trial court failed to balance defendants' assertion that videorecording may interfere with Dr. Huffman's testing against plaintiff's assertion that videorecording will protect her interests. The trial court concluded that defendants' concerns do not outweigh plaintiff's in this case, reasoning that videorecording would be less obtrusive than the presence of plaintiff's counsel at the examination. An abuse of discretion standard acknowledges that there may be more than one reasonable and principled outcome under the circumstances; when the trial court selects one of those outcomes, it has not abused its discretion. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). The decision to impose conditions under MCR 2.311(A) is a matter of discretion, and in this case it cannot be said that the trial court selected an outcome outside the range of principled outcomes by ordering the videorecording of the examination in this case.

Affirmed.

/s/ Jane E. Markey
/s/ Deborah A. Servitto
/s/ Michael F. Gadola

---

[1] *Muci* involved medical examinations under MCL 500.3158 and MCL 500.3159 of the no-fault act, MCL 500.3101, *et seq*. The Court in *Muci* concluded that an injured party seeking no-fault benefits was required to undergo an examination and that a party seeking to avoid a medical examination bears the burden of demonstrating good cause why the examination should not be had or why conditions should be imposed. *Muci*, 478 Mich at 192. However, the *Muci* Court specifically distinguished the trial court's discretionary authority under MCR 2.311(A) from the statutes at issue in *Muci*. *Id*. at 190-191 & n 8. The Court specifically acknowledged the different burden of proof, noting that "[w]hile MCR 2.311 requires the party seeking the medical examination to demonstrate good cause, § 3159 requires the party seeking to impose conditions on a discovery order such as an order for a medical examination to show good cause." *Id*. at 191 n 8.