*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

DIANA RICHARDSON, Personal Representative of
the ESTATE OF NAOMI RICHARDSON,

UNPUBLISHED
January 19, 2023

       Plaintiff-Appellant,

v

No.   359818
Wayne Circuit Court
LC No.   19-013475-NI

RYAN JALEN MENIFEE and SHERRI MENIFEE,

       Defendants,

and

INTEGON NATIONAL INSURANCE COMPANY,

       Defendant-Appellee.

Before:  M. J. KELLY, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

In this case, arising out of an automobile accident involving Naomi Richardson, plaintiff, Diana Richardson, as personal representative of Richardson's estate,[1] appeals the trial court's order granting summary disposition in favor of defendant, Integon National Insurance Company, and dismissing plaintiff's claim for payment of no-fault benefits, on the basis that Richardson's insurance policy was void *ab initio* because she made a material misrepresentation in her application regarding the use of her vehicle.  We vacate that order and remand for the trial court to consider whether Integon should be permitted to amend its affirmative defenses to assert rescission.

---

[1] For ease of reference, references to "Richardson" will be to Naomi Richardson and references to "plaintiff" will refer to the personal representative of her estate.

# I. BASIC FACTS

Richardson worked for Shipt, a grocery-delivery service. She worked five days a week, while her daughters attended school, and completed several deliveries per day. She used her personal vehicle to transport the groceries. On March 4, 2019, Richardson finished her last grocery delivery for the day, and was driving her vehicle to pick her daughters up from school when she was involved in an automobile accident. She was not treated for any injuries at the scene, but afterward experienced pain in her back, neck, and shoulders, for which she sought treatment, including pain management, medication, physical therapy, and chiropractic services.

Richardson applied for no-fault benefits from her no-fault insurer, Integon, who initially paid some personal injury protection (PIP) benefits. However, after Richardson underwent a defense medical examination (DME),[2] Integon suspended her benefits in May 2019 on the basis of the DME's results, which indicated that she could return to her pre-accident physical activities without any limitation. Richardson did not return to work and, despite Integon's refusal to continue PIP benefits, continued treatment for her alleged accident-related injuries. Richardson initiated this lawsuit, on October 10, 2019, for payment of no-fault benefits.

During discovery, in March 2020, Richardson was deposed and revealed that she had used her vehicle to deliver groceries in her job as a driver for Shipt. This use was contrary to the representation on her insurance application that she did not use her vehicle for business purposes. According to Integon, that misrepresentation was material, thereby triggering Integon's right to rescind the policy under its terms and Michigan law. In particular, Gina Akrawi, an insurance agent with LA Insurance, was deposed in June 2020, during which she testified that Integon would not have issued the policy had it known of Richardson's commercial use. Integon moved for summary disposition, asserting that Richardson's policy was void *ab initio* because of her misrepresentation. To establish that the misrepresentation was material, Integon relied on Akrawi's testimony.

In response, plaintiff challenged the sufficiency of the evidence to establish the materiality of the misrepresentation, arguing that Akrawi, who was not an Integon representative, was not competent to testify regarding Integon's underwriting requirements. Plaintiff also raised equitable arguments, asserting that Integon should be precluded from raising rescission as a defense because it initially denied Richardson's no-fault benefits solely on the basis of her DME, and did not properly raise her misrepresentation as an affirmative defense, or otherwise, as a basis for denying benefits, before moving for summary disposition. Plaintiff claimed that Integon's delayed assertion of its right to rescind the policy prejudiced Richardson, who incurred medical costs of

---

[2] Although the parties refer to the examination as an "independent" medical examination, this opinion will refer to it as a defense medical examination because it is an examination requested by the defense that is conducted by a medical examiner selected by the defense. See *Muci v State Farm Mut Auto Ins Co*, 478 Mich 178, 182; 732 NW2d 88 (2007) (stating that a medical examination requested by the defense is "customarily referred to as a defense medical examination or a DME").

over $200,000 while believing that Integon's sole basis for denying coverage was the DME and that her policy would otherwise remain in effect.

In reply, Integon presented the affidavit of Rose Chrustic, a Senior Underwriting Manager for Integon, who averred that Integon's underwriting guidelines provided, "We will not insure: Vehicles used for emergency, racing, livery, and delivery or pick up of goods, limousine, or taxi service or used to haul explosives." Chrustic further averred that Richardson's misrepresentation "materially affected the risk because Integon would have never accepted the risk (i.e., written this insurance policy) had this information been disclosed, because it does not insure vehicles used for business purposes, specifically, the delivery or pick up of goods." In responding to plaintiff's equitable arguments, Integon argued that it could properly demand rescission on the basis of the newly discovered information and that Richardson could not have been prejudiced by any delayed assertion of its right to rescind the policy because she was responsible for the misrepresentation on which Integon relied, and aware that false or misleading answers on her application could result in rescission.

After a hearing, the trial court agreed with Integon that there was a material misrepresentation, and that "rescission is an equitable remedy that is allowed." The court then entered an order granting Integon's motion for summary disposition, declaring the subject insurance policy void *ab initio*, and dismissing all claims against Integon with prejudice. Plaintiff moved for reconsideration, which the trial court denied.

## II. AFFIRMATIVE DEFENSE

### A. STANDARD OF REVIEW

Plaintiff argues that Integon waived its right to assert rescission of her policy by failing to properly raise that as an affirmative defense. Although the trial court did not directly address this issue, plaintiff raised it before the trial court and more fully developed it on appeal. This Court has recognized that, "so long as the issue is not novel, a party is generally free to make a more sophisticated or fully developed argument on appeal than was made in the trial court." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 228; 964 NW2d 809 (2020). Therefore, we conclude that plaintiff preserved this issue for appellate review. We "review de novo the sufficiency of any assertions of affirmative defenses." *Id*. at 229.

### B. ANALYSIS

"[T]he primary function of a pleading in Michigan is to give notice of the nature of the claim or defense sufficient to permit the opposing party to take a responsive position." *Glasker-Davis*, 333 Mich App at 229 (quotation marks and citation omitted). Under our court rules, a party generally must raise an affirmative defense in its first responsive pleading, as originally filed or amended, or is deemed to have waived it. MCR 2.111(F)(2) and (3); *Meridian Mut Ins Co v Mason-Dixon Lines, Inc (On Remand)*, 242 Mich App 645, 647; 620 NW2d 310 (2000). Affirmative defenses include allegations of fraud, MCR 2.111(F)(3)(a); any defense "that by reason of an affirmative matter seeks to avoid the legal effect of or defeat the claim," MCR 2.111(F)(3)(b); and "a ground of defense that, if not raised in the pleading, would be likely to take the adverse party by surprise," MCR 2.111(F)(3)(c). Thus, the defense of rescission on the basis

of Richardson's material misrepresentation in her insurance application was an affirmative defense that Integon was required to raise in its first responsive pleading, as originally filed or amended.

In asserting an affirmative defense, a defendant must plead the "facts constituting" the defense. MCR 2.111(F)(3). This Court addressed the sufficiency of asserting affirmative defenses in *Glasker-Davis*. In that case, the plaintiff was injured in an automobile accident and claimed PIP benefits from her no-fault insurer, Meemic Insurance Co, for replacement-care services that her daughter had allegedly provided on a daily basis for several months. *Glasker-Davis*, 333 Mich App at 223-224. Meemic set forth a list of "boilerplate" affirmative defenses, including that "[t]he Plaintiff has given false and/or conflicting information to Defendant, thus, are [sic] fraudulent in nature." *Id*. at 224 (alteration in original). The plaintiff had testified at her deposition that her daughter actually performed the replacement-care services on a daily basis for only a brief period and thereafter did so only two or three times a week. This prompted Meemic to move for summary disposition on the basis that the plaintiff made material misrepresentations that voided her policy under its antifraud provision. *Id*. at 225-226. The plaintiff, however, argued that Meemic waived its fraud defense by failing to properly assert it as an affirmative defense, on the ground that it was not pleaded with the requisite particularity. *Id*. at 226. She asserted that she was prejudiced by Meemic's assertion of fraud after the close of discovery because she was precluded from deposing her daughter, particularly over whether the plaintiff had intentionally provided inaccurate information regarding her claim for the daughter's replacement-care services. *Id*. at 226-227. Concluding that there was no question of fact that the plaintiff intentionally made material misrepresentations, the trial court granted Meemic's motion, without addressing the plaintiff's waiver argument. *Id*. at 227.

The *Glasker-Davis* Court reversed, on the ground that Meemic "did not adequately raise the affirmative defense of fraud." *Id*. at 233. The Court concluded that a "defense premised on an alleged violation of an antifraud provision in an insurance policy constitutes an affirmative fraud defense" that must be pleaded with particularity. *Id.* at 232; see also MCR 2.112(B)(1). Noting that "the affirmative defense of fraud . . . is a notable exception to the general notice-pleading requirements and requires significantly more detailed and stringent allegations[,]" this Court concluded that "it is insufficient simply to state that a plaintiff's conduct was fraudulent." *Glasker-Davis*, 333 Mich App at 232. The Court instructed that "a defending party is not required to inundate a plaintiff with a laundry list of every conceivable affirmative defense from the outset, irrespective of whether there is reason to believe any of the defenses might ultimately be supportable." *Id*. at 231. Indeed, "[s]hoehorning every conceivable possibility, appropriate or not, into a first responsive pleading lest it be lost forever is not only unnecessary, but also inappropriate, unhelpful, and essentially contrary to the purpose of pleading." *Id*. at 231. This Court added, "a tome of disconnected boilerplate affirmative defenses, many of questionable relevance, does not provide the opposing party with any meaningful way to respond." *Id*. at 232. Instead, a party may "move to amend its affirmative defenses at any time, and leave should be granted freely unless doing so would prejudice the other party." *Id*. at 230. Thus, "a defending party may, and should, amend its affirmative defenses on an ongoing basis as supported by the actual evidence discovered in a matter." *Id*. at 231.

The *Glasker-Davis* Court concluded:

A defense premised on an alleged violation of an antifraud provision in an insurance policy constitutes an affirmative fraud defense. "In allegations of fraud or mistake, the circumstances constituting fraud or mistake must be stated with particularity." MCR 2.112(B)(1). Thus, it is insufficient simply to state that a plaintiff's conduct was fraudulent. Meemic accurately points out that it went beyond merely stating that plaintiff committed fraud. However, Meemic still only vaguely stated that plaintiff had provided Meemic with some unidentified information, at an unidentified time, that was incorrect or inconsistent in an unidentified way. Meemic argues that some of its other affirmative-defense allegations provide adequate context to render its fraud claim sufficient. However, as with the fraud allegation, few of those other allegations set forth any facts or circumstances with particularity, and they only barely rise to the level of something more specific than mere citations.

Consequently, it is obvious that Meemic's affirmative defenses did not adequately raise the affirmative defense of fraud. The trial court erred by granting summary disposition in Meemic's favor on the basis of fraud under the present procedural posture of this matter. [*Glasker-Davis*, 333 Mich App at 232-233 (quotation marks and citations omitted).]

*Glasker-Davis* confirms that, in asserting fraud as an affirmative defense, general pleading is not sufficient. Instead, MCR 2.112(B)(1) requires that the insurer set forth specific facts or circumstances constituting any alleged fraud. MCR 2.112(D)(2)(b) similarly states that a defense of "failure to furnish proof of loss as required by the policy must be stated specifically and with particularity." For these reasons, we conclude that an insurer must assert, "specifically and with particularity," an affirmative defense of rescission based on a material misrepresentation.

Integon contends that its affirmative defenses were sufficient to provide plaintiff with notice that Integon was relying on Richardson's material misrepresentation to rescind her policy under its terms. However, in its answer, which, under a separate heading, listed 54 general affirmative defenses, Integon did not specifically include rescission based on material misrepresentation. Integon's stated affirmative defenses arguably might have provided plaintiff with some general notice that it might rely on such a defense, i.e., that her claims might be barred by "misrepresentation(s) which breach policy terms"[3]; that Integon "relies on its defense, upon the

---

[3] This defense was set forth as follows:

1. That the subject matter involved in the Complaint has been initiated between the same parties in another matter and is or may be barred pursuant to Release, payment, prior settlement, prior judgment, immunity by law, statute of limitations, statute of frauds, agreement for arbitration, one or more parties do not have the capacity to sue or be sued, disability of one or more parties, misrepresentations(s) which breach policy terms, and/or the claim was disposed before commencement of this action.

terms, covenants, conditions, and/or immunities set forth in the subject policy of insurance"; that her claims are "in some manner fraudulent . . ."[4]; and that the claims "are barred due to his [sic] failure to comply with requests for application, information and/or documents as required by any policy." Integon also referred to rescission in its affirmative defenses, by stating that "Plaintiff has failed to attach the policies of insurance and other documents upon which they rely, in violation of MCR 2.113; that, in point of fact, the specific policy of insurance herein sued upon may have been canceled, revoked, rescinded and/or otherwise been invalid and/or otherwise not in force at the time of the accident herein at issue."

As in *Glasker-Davis*, Integon's long list merely presents boilerplate affirmative defenses that are general in nature and lack any specific facts or circumstances presenting the misrepresentation theory as it has developed, and thus we agree that they were not sufficient to provide plaintiff with the requisite particularity. Although Integon referred generally to fraud, misrepresentation, and rescission as a possible affirmative defense in its answer, it did not specify Richardson's purportedly false representation or the circumstances surrounding it, or its intent to rescind her policy because of it, and thus failed to provide plaintiff with notice that Integon was invoking the defense at issue. As *Glasker-Davis*, 333 Mich App at 232-233 instructs, such general references, without any context or specific facts, were inadequate.

Nevertheless, as Integon asserts, the record shows that Integon first learned of Richardson's misrepresentation regarding the business use of her vehicle during discovery, several months after filing its answer, and thus, as a practical matter, could not have specifically asserted that as a basis for rescission with its original answer.[5] However, as this Court acknowledged, "Michigan's procedural rules recognize and account for the fact that it may not be possible to plead fraud, or indeed anything else, with particularity at the commencement of a case," and thus "[a] party may move to amend its affirmative defenses at any time, and leave should be granted freely unless doing so would prejudice the other party." *Id*. at 230. See also MCR 2.118(A)(2). "Under MCR 2.118(C), amendments to conform to the evidence 'may be made on motion of a party at any time, even after judgment.' " *Glasker-Davis*, 333 Mich App at 230. "Just as affirmative defenses may be added by amendment without waiving them, . . . it makes sense to allow them to be raised when they become legally available." *Meridian Mut Ins*, 242 Mich App at 648 (quotation marks and citation omitted). Indeed, this Court has instructed that a defending party should amend its

---

[4] With that affirmative defense, defendant stated, "Plaintiff's claims are in some manner fraudulent or so clearly excessive as to have no reasonable founding within the meaning of MCL § 500.3148(2)."

[5] We disagree with plaintiff's contention that Integon had notice of the alleged misrepresentation shortly after the accident occurred on the basis that Richardson disclosed her employment with Shipt in her application for benefits and during a phone call with an Integon representative regarding the status of her work-loss benefits. While this evidence may establish that, shortly after the accident, Integon had notice that Richardson worked for Shipt as a shopper/driver, nothing indicated that Richardson had additionally disclosed that she used her insured vehicle in that work so as to put Integon on notice that she may have made a material misrepresentation in her insurance application.

affirmative defenses as evidentiary development suggests. *Glasker-Davis*, 333 Mich App at 231. And "[a]mendment is generally a matter of right." *VHS of Mich, Inc v State Farm Mut Auto Ins Co*, 337 Mich App 360, 373; 976 NW2d 109 (2021).

As a result, upon learning that Richardson made a material misrepresentation in her insurance application, Integon should have promptly moved to amend its affirmative defenses to set forth the requisite specific facts constituting its defense of rescission on the basis of that misrepresentation. But the record does not indicate, nor does Integon assert, that Integon ever moved to amend its affirmative defenses for that purpose. And, there is no indication that Integon otherwise notified Richardson of its intent to rescind her policy over her misrepresentation before it moved for summary disposition on that basis, after discovery, and several months after Richardson first disclosed her misrepresentation at her deposition. We further note that Integon does not dispute plaintiff's assertion that Richardson was not so specifically notified.[6] As plaintiff points out, well after Richardson's disclosure, Integon, in responding to plaintiff's interrogatories asking Integon to state fully its basis for its nonpayment of PIP benefits, referred to the DME report as the basis for suspending Richardson's benefits, but did not mention that it was also electing to rescind the policy on the basis of Richardson's misrepresentation regarding the use of her vehicle.[7]

On this record, we hold that Integon failed to adequately assert, with requisite factual specificity, its affirmative defense of rescission based on Richardson's material misrepresentation in its responsive pleading, as originally filed or amended.

However, this does not mean that Integon necessarily waived that defense, because, as noted, a defendant may move to amend its affirmative defenses at any time, and leave should be freely granted unless doing so would prejudice the opposing party. See *Glasker-Davis*, 333 Mich App at 230. Therefore, as in *Glasker-Davis*, we conclude that it is appropriate to vacate the trial court's order granting summary disposition and remand this case to the trial court to allow Integon to move to amend its affirmative defenses, and plaintiff to respond to the motion, in order for the court to decide the matter of amendment and waiver in the first instance. See *id.* at 231-233.[8]

---

[6] Under the policy, rescission was not automatic in the event of a material misrepresentation; rather, Integon had the discretion to void or rescind the policy in the event of misrepresentation or fraud. Likewise, the insurance application states that Integon "may" rescind the policy if the applicant provides false or misleading answers that materially affect the risk assumed by issuing the policy. Thus, assuming Richardson was aware that she had materially misrepresented the nature of the use of her vehicle in her application, that did not necessarily mean that she was aware that Integon had elected to rescind her policy because of that.

[7] Integon also generally answered that discovery was ongoing, it was unable to provide the specific factual basis for its affirmative defenses, and it would supplement its affirmative defenses upon completion of discovery.

[8] In light of our holding, we decline to address plaintiff's additional arguments on appeal.

For the reasons stated, we vacate the trial court's order granting Integon summary disposition and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff may tax costs as the prevailing party. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle