*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAMAL AL-RAHIMI,

       Plaintiff-Appellant,

and

INSIGHT CHIROPRACTIC CENTER, INSIGHT
ORTHOPEDIC SPECIALISTS, INSIGHT
PHYSICAL THERAPY & NEURO-REHAB
CENTER, and INSIGHT PAIN MANAGEMENT
CENTER,

       Intervening Plaintiffs,

v

ALLSTATE INSURANCE COMPANY,

       Defendant,

and

SOPHIA RYANE OAKES,

       Defendant-Appellee.

UNPUBLISHED
August 17, 2023

No. 362652
Oakland Circuit Court
LC No. 2020-180826-NI

Before: BOONSTRA, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

-1-

Plaintiff appeals as of right the order granting summary disposition in favor of defendant Sophia Ryane Oakes (defendant).[1] Plaintiff contends that a genuine issue of material fact was presented regarding the threshold injury for purposes of MCL 500.3135. We reverse and remand for proceedings consistent with this opinion.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In April 2020, plaintiff filed a complaint, alleging that at 9:41 p.m. on September 18, 2019, defendant recklessly and negligently failed to yield and drove her vehicle into plaintiff's motor vehicle. In count I, plaintiff alleged that Allstate Insurance Company (Allstate) was liable for personal protection benefits (PIP). Plaintiff contended that he incurred medical expenses, hospital expenses, lost services, including attendant care, uninsured/underinsured motorist benefits, and other damages to be determined in discovery. Plaintiff claimed that Allstate unreasonably and unlawfully refused to pay plaintiff PIP benefits despite reasonable proof of the damages, warranting penalty interest on overdue benefits. In count II, plaintiff alleged that defendant driver operated her vehicle in violation of various traffic laws, failed to obtain adequate insurance, and was guilty of negligence. Plaintiff asserted that he sustained serious impairment of a bodily function caused by defendant's negligence.

Defendant moved for summary disposition under MCR 2.116(C)(10), asserting that she was not liable to plaintiff for non-economic damages because plaintiff did not suffer death, serious impairment of body function, or permanent disfigurement, MCL 500.3135(1). Specifically, she claimed that plaintiff did not suffer an objectively manifested impairment of an important body function that affected his general ability to lead his normal life. The police report reflected that defendant's vehicle struck plaintiff's vehicle when defendant drove out of a gas station on Wixom Road. At the time, plaintiff was driving his 2014 Toyota Prius for Uber with a passenger in the backseat. Although plaintiff's vehicle suffered disabling damage, the airbags on both vehicles did not deploy, and plaintiff refused medical treatment at the scene. Although plaintiff claimed injuries to his neck, left shoulder, lower back, and left leg, he did not seek medical treatment until the day after the accident, September 19, 2019.[2] Imaging studies at the hospital did not disclose any fractures, no cervical spine tenderness, or other pathology. And plaintiff was diagnosed with "nonspecific myalgias" and "possible osseous contusions" or muscle aches and pains and a potential bone bruise. He was not given any prescriptions. Plaintiff proceeded to undergo treatment with physical therapy, medications, chiropractic care, massage therapy, and personal training. But, there were no objective medical findings to support the treatment. Specifically, three magnetic resonance imaging tests (MRIs) and four x-ray studies did not reveal any objective

---

[1] On August 25, 2021, the parties stipulated to dismiss defendant Allstate Insurance Company. The singular defendant refers to Oakes.

[2] In the brief, defendant identified the date after the accident as September 20, 2019. The police report and medical records reflect that the accident occurred on September 18, 2019, and plaintiff sought treatment at the Hurley Emergency Room on September 19, 2019.

findings of injury. Further, three independent medical examinations (IMEs)[3] concluded that there were no objective findings to support plaintiff's subjective complaints.

To recover non-economic damages, plaintiff must demonstrate a serious impairment of a body function: (1) an objectively manifested impairment; (2) of an important body function that; (3) affects plaintiff's general ability to lead his normal life. Defendant's motion for summary disposition asserted that plaintiff could not show an objectively manifested impairment because the imaging studies did not demonstrate acute, traumatic injuries. Therefore, plaintiff's self-serving testimony that he was unable to lead his normal life was insufficient to meet this standard, and summary disposition in defendant's favor was proper.

Plaintiff filed his brief in opposition to the dispositive motion, alleging that he suffered excruciating injuries as a result of defendant's failure to yield. Plaintiff claimed that liability in this case was established because defendant wrongfully failed to yield and caused the collision with plaintiff's vehicle. When plaintiff presented at the emergency room, he was positive for chest pain, arthralgias, back pain, myalgias, and neck pain. The emergency room record noted that plaintiff suffered nonspecific myalgias and possible osseous contusions from the auto accident. Plaintiff's further treatment revealed cervical radiculitis, thoracic radiculitis, lumbar radiculitis, right knee and hand pain, and bilateral shoulder pain. The MRI and x-ray of the cervical spine revealed disc herniation with mild to moderate central spinal canal stenosis, and a disc herniation with mild mass effect upon the cervical cord. The MRI of the knee revealed a meniscus tear. Even the IMEs disclosed positive findings despite occurring months after the accident. Accordingly, plaintiff alleged that he demonstrated a serious impairment. Plaintiff's injuries also impacted important body functions. Specifically, the injuries to his legs and knees impacted his ability to walk. Likewise, the injuries to his upper extremities pertained to important body functions. The injuries impacted plaintiff's general ability to live his normal life. Plaintiff was employed as a driver for Uber, Lyft, and DoorDash, and he missed 26 weeks of work, losing income. Plaintiff also relied on his father for 179 days to assist in cooking, dishwashing, and making the beds. These services were the result of plaintiff's cervical herniations, stenosis, and knee tear that left him unable to stand for long periods. Under the circumstances, plaintiff asserted that defendant's motion for summary disposition must be denied.

The trial court issued an opinion and order granting defendant's dispositive motion with the following summary of facts:

Plaintiff asserts he was injured as a result of an accident caused when Defendant's vehicle struck Plaintiff's vehicle. At the scene of the accident, Plaintiff refused treatment but reported to the hospital the next day with complaints related to the accident. The x-rays and MRIs did not reveal any breaks or fractures. However, Plaintiff complained of pain and the medical records reflect Plaintiff

---

[3] Our citation to the phrase "independent medical examination" is consistent with the parties' usage. We recognize that the independence of the examination may be called into question, see *Micheli v Mich Auto Ins Placement Facility*, 340 Mich App 360, 364 n 3; 986 NW2d 451 (2022), and reference to a defense medical examination or evaluation may be more appropriate, see e.g., *Muci v State Farm Auto Ins Co*, 478 Mich 178, 182; 732 NW2d 88 (2007).

"likely has nonspecific myalgias and possible osseous contusions from the collision/accident." In response to the instant motion, Plaintiff cites to the medical records of several providers. The MRI records provided by Gravity Imaging indicate "small right paramedian disc herniation with mild effacement of the right anterior cervical cord with borderline spinal stenosis." But the Gravity Imaging records fail to connect the injury to the accident. The records from Insight Imaging note a tear in the medical meniscus but likewise fail to connect the injury to the accident.

However, the medical records of Dr. Sarmast relate the injuries to the accident. The records from Dr. Rosenbaum also reflect "minor contusion and strains of the chest wall, cervical brachial area, lumbar area, and right knee [which] more likely than not were related to the motor vehicle accident." In the instant motion, Defendant argues the injuries do not rise to the level required and seeks summary disposition pursuant to MCR 2.116(C)(10).

After citing to the standard applied to summary disposition motions, MCL 500.3135(1), and caselaw, the trial court granted defendant's dispositive motion, stating:

In the case at bar, some of the medical records indicate the injuries are related to the accident, while other records fail to address the cause of the injuries. For purposes of the instant motion, the evidence must be reviewed in the light most favorable to Plaintiff and all reasonable inferences must be drawn in his favor. However, this does not end the analysis.

Plaintiff must demonstrate his general ability to lead his normal life was disrupted by the injuries from the automobile accident. The medical records relate some [of] the injuries and objective findings to the accident. But the medical records do not relate the inability to lead his normal life to the injuries. Rather, Plaintiff has unsubstantiated complaints of various injuries which are not supported by the objective medical records nor related to the accident. Thus, as Plaintiff cannot demonstrate the injuries caused by the accident have affected his general ability to lead his normal life, summary disposition is appropriate. The [defendant's] motion for summary disposition pursuant to MCR 2.116(C)(10) is granted.

From this decision, plaintiff appeals.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Batista v Office of Retirement Servs*, 338 Mich App 340, 354; 980 NW2d 107 (2021). A motion for summary disposition premised on MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Charter Twp of Pittsfield v Washtenaw Co Treasurer*, 338 Mich App 440, 449; 980 NW2d 119 (2021). The moving party must identify and support the issues to which the moving party believes there is no genuine issue of material fact, and the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted with the motion must be examined. *Id*. Once the

moving party makes and supports its motion, the opposing party may not rest on mere allegations or denials in the pleadings, but must submit documentary evidence setting forth specific facts to demonstrate a genuine issue for trial. *Id.*

## III. ANALYSIS

Plaintiff contends that the trial court erred in granting defendant's motion for summary disposition because he presented sufficient evidence to create a factual issue regarding a threshold injury. We agree.

This dispute is governed by MCL 500.3135. "A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). "Serious impairment of body function" is defined as an "objectively manifested" "impairment of an important body function" that "affects the injured person's general ability to lead his or her normal life." MCL 500.3135(5).[4] The question whether an injured party has suffered a serious impairment presents a question of law for the court if there is no factual dispute surrounding the nature and extent of the person's injuries or any factual dispute is immaterial to determining whether the standard was met. MCL 500.3135(2)(a); *McCormick v Carrier*, 487 Mich 180, 190-191; 795 NW2d 517 (2010).

The plain and unambiguous language of the statute contains three requirements that are necessary to establish a serious impairment of body function: "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *McCormick*, 487 Mich at 194-195. "Objectively manifested" is "an impairment that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *Id.* at 196; see also MCL 500.3135(5)(a). The term "impairment" relates to the impact of damage that arises from an injury. *Id.* at 197; see also MCL 500.3135(5)(b). When addressing impairment, the focus is not

---

[4] In full, MCL 500.3135(5) reads:

As used in this section, "serious impairment of body function" means an impairment that satisfies all of the following requirements:

(a) It is objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person.

(b) It is an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person.

(c) It affects the injured person's general ability to lead his or her normal life, meaning it has had an influence on some of the person's capacity to live in his or her normal manner of living. Although temporal considerations may be relevant, there is no temporal requirement for how long an impairment must last. This examination is inherently fact and circumstance specific to each injured person, must be conducted on a case-by-case basis, and requires comparison of the injured person's life before and after the incident.

on the injuries, but on how the injuries affected a particular body function. *McCormick*, 487 Mich at 197. A plaintiff must introduce evidence demonstrating a physical basis for his subjective complaints of pain and suffering, and this showing generally requires medical documentation. *Id.* at 198. Important body function refers to a function of significance and will vary depending on the person. *Id.* at 199. Therefore, the inquiry regarding an important body function is "an inherently subjective inquiry that must be decided on a case-by-case basis, because what may seem to be trivial body function for most people may be subjectively important to some, depending on the relationship of that function to the person's life." *Id.*

Notably, "[t]here is no 'express temporal requirement as to how long an impairment must last in order to have an effect on the person's general ability to live his or her normal life." *Piccione v Gillette*, 327 Mich App 16, 21; 932 NW2d 197 (2019) quoting *McCormick*, 487 Mich at 203 (quotation marks omitted); see also MCL 500.3135(5)(c). In *Burk v Warren*, 105 Mich App 556, 566-567; 307 NW2d 89 (1981), this Court explained that the Legislature did not require permanency for purposes of addressing serious impairment, stating:

> Adherents of a policy of maintaining a high definitional threshold for the phrase "serious impairment of body function" use as one of their chief arguments the contention that an injury must have long-lasting effects to meet this threshold. In this case such a policy would point to a conclusion that a clavicular fracture is not a serious impairment of a body function.

> The theory that the severity of an injury must be largely determined by its required period of convalescence is consistent with neither logic nor law. An injury such as whiplash can last for weeks yet have no real effect on the functioning of one's body processes. By way of contrast, a pronounced cerebral concussion may result in temporary loss of consciousness which would well be a serious impairment of body function. It is clear that longevity of recovery is but one element to be used in ascertaining whether a given injury amounts to a serious impairment of body function.

> The Legislature recognized as much when it omitted "permanent", "long-lasting", "lengthy" or any other descriptive, temporal word in describing serious impairment. That the Legislature was aware of its option is readily apparent from its use of the word "permanent" to qualify serious disfigurement in the same statutory section.

> Any effort to impose time requirements in the area of serious impairment of body function amounts to a judicial engrafting of an additional requirement onto a plainly worded statute. This we cannot do.

Moreover, "the aggravation or triggering of a preexisting condition can constitute a compensable injury." *Fisher v Blankenship*, 286 Mich App 54, 63; 777 NW2d 469 (2009). Despite the existence of a preexisting condition, recovery may be allowed if the trauma caused by the accident triggered symptoms from that condition. *Wilkinson v Lee*, 463 Mich 388, 395; 617 NW2d 305 (2000). But, in light of the passage of time and intervening events, a causal connection between injuries may be too attenuated. See e.g., *McPherson v McPherson*, 493 Mich 294, 298-299; 831 NW2d 219 (2013).

As an initial matter, we note that, in moving for summary disposition, defendant contended that plaintiff failed to present objective evidence of an injury. After summarizing selective portions of the medical evidence and relying heavily on excerpts from the IMEs, defendant concluded that plaintiff could not demonstrate an impairment. Then, defendant failed to submit any analysis of whether plaintiff's general ability to lead a normal life was impacted. Rather, defendant concluded that because plaintiff could not demonstrate an impairment, he also could not demonstrate the third factor. Indeed, in the trial court, the entirety of defendant's argument in support of summary disposition was:

> Based on Plaintiff's imaging studies the day after the accident within the emergency room of Hurley Medical Center, the MRIs of Plaintiff a week after the accident, and the x-rays of Plaintiff taken two months after the subject accident, there are no acute, traumatic injuries. Furthermore, the IMEs showed there was nothing objective to substantiate what Plaintiff is claiming as far as injuries. Thus, Plaintiff has failed to show an objectively manifested impairment because the only person observing any alleged injury is the Plaintiff himself. Consequently, Plaintiff's self-serving testimony cannot establish that he was unable to lead his normal life as required by the holding of *McCormick*. For these reasons, Plaintiff has not proffered sufficient evidence in this case to support his contention that he sustained an objectively manifested injury or that his pre-accident lifestyle was negatively affected.

Defendant's contention that plaintiff did not suffer an objective impairment and provided self-serving testimony of an injury is not substantiated by the record. Within a week of the accident, plaintiff sought treatment from Spine & Health for injuries suffered in the automobile accident. Dr. William Gonte ordered an MRI. On September 25, 2019, the MRI of plaintiff's cervical spine revealed there was "[m]oderate left posterolateral and left lateral C5-C6 disc herniation with mild to moderate central spinal canal stenosis and left C5-C6 neuroforaminal narrowing." Additionally, on January 13, 2020, Insight Imaging performed an MRI on plaintiff's left knee because he complained of pain since the motor vehicle accident. Dr. Michael Paley determined that there was a "linear increased signal at the posterior margin of the posterior horn of the medial meniscus that appears to extend through the surface consistent with a small peripheral tear." Following the MRI of the left knee, Dr. Zubair Sarmast concluded that plaintiff suffered the meniscus tear and "runner's knee" as a result of the vehicular accident. Dr. Sarmast proposed conservative treatment consisting of six to eight weeks of physical therapy on the knee.

Plaintiff testified that he was a full-time driver for persons or services through Uber, Lyft, and DoorDash when he was injured in the September 18, 2019 accident. After the accident, he reported injuries to his neck, lower back, head, shoulders, and knees. He denied being solicited to seek medical treatment. Despite the language barrier, plaintiff testified that he received treatment in the form of diagnostic MRIs, medication, and physical therapy. He was given a disability certificate, and his father performed replacement services.[5] Accordingly, defendant's contention

---

[5] With the documentary evidence, only one disability certificate was submitted for the period of 9-25-2019 to 10-25-2019. However, in the October 25, 2019 record from Spine & Health, Dr. Gonte

that plaintiff only offered self-serving testimony regarding his injuries was not supported by the record. Moreover, defendant concluded that plaintiff also offered self-serving testimony about his ability to live his life without initially supporting the contention with documentary evidence addressing the general ability to live a normal life. Specifically, defendant must support its claim for summary disposition by affidavits, depositions, admissions, or other documentary evidence. *McCoig Materials LLC v Galui Constr, Inc*, 295 Mich App 684, 693; 818 NW2d 410 (2012). Once this evidence is presented, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists for trial. *Id*. Because defendant failed to make and support the contention that plaintiff's general ability to live his normal life was not impacted, there was no burden placed on plaintiff to address defendant's contention.

Despite defendant's characterization of the record and failure to address with documentary evidence plaintiff's general ability to live his normal life, the trial court granted summary disposition. In granting the motion, the trial court initially noted that plaintiff presented evidence, when viewed in his favor, that supported the contention that the injuries plaintiff suffered were correlated to the accident. Thereafter, the trial court seemingly contradicted its acknowledgment of plaintiff's factual support for his claim and then held that plaintiff failed to demonstrate an impact on his general ability to lead a normal life, despite defendant's failure to present evidence addressing this aspect of the claim.

In light of defendant's deficiencies in demonstrating entitlement to summary disposition and the trial court's contradictory statement, it was error to grant summary disposition in defendant's favor. Defendant ignored the objective evidence of plaintiff's injuries as set forth in the medical records including the MRIs, prescribed medications, and physical therapy. In addition to the medical records, plaintiff, in his deposition, testified that his injuries resulted from the September 2019 car accident. Plaintiff noted that he was previously involved in an accident in March 2019, but suffered no injuries at that time. Additionally, Drs. Gonte and Sarmast determined that plaintiff's injuries were the result of the September 2019 accident. Although the doctors that performed the IMEs may have disagreed regarding causation or the treatment rendered, plaintiff presented a factual issue for resolution by the jury. Therefore, the trial court erred by stating that plaintiff had unsubstantiated injury complaints unsupported by objective medical records that were unrelated to the accident.

Additionally, defendant merely concluded that plaintiff only presented self-serving testimony regarding the general ability to live a normal life. But defendant did not move for and support this contention with documentary evidence. The burden then did not shift to plaintiff to demonstrate a genuine issue of material fact. Nonetheless, in *McCormick*, the Court noted that a "normal life" may be impacted when a plaintiff previously went from working 60 hours a week as a "medium truck loader" to being unable to work for a minimum of 14 months and precluded from returning to the same job. Additionally, an inability to engage in hobbies at the same skill level

---

indicated that he "renewed [plaintiff's] disability certificate as well as his prescriptions for physical therapy and occupation therapy[.]" Also, documentary evidence was submitted that plaintiff's father provided household services consisting of cooking, dishwashing, and making beds from September 19, 2019 through November 30, 2019, or approximately 10 weeks of services.

and an inability to attend to personal needs impacted a plaintiff's "normal life." See *McCormick*, 487 Mich at 217. The record in this case reflects that plaintiff testified that he experienced pain with "movement" and, if he moved "a lot," he felt pain in his left knee. Plaintiff further testified that his doctor disabled him from performing replacement services or housework, and there was documentary evidence that plaintiff's father performed replacement services. Additionally, plaintiff testified that he worked full-time as a driver, and he stopped working between the time of the accident and March 17, 2020, or approximately six months. Contrary to defendant's assertion, plaintiff's evidence did present a factual issue regarding the accident and its impact on his general ability to live a normal life.[6]

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Anica Letica
/s/ Kathleen A. Feeney

---

[6] In defendant's brief on appeal, defendant, for the first time, alleged that plaintiff did not suffer non-economic damages. Because there is no indication that this issue was ever raised in the trial court, we decline to address it.